# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# DISTRICT OF COLUMBIA.

## KING v. SHELTON.

TRUSTS AND TRUSTEES; WILLS; GIFTS.

1. A trust created by the codicil of a will is valid, which provides that certain legacies made by the will shall be held in trust and allowed to accumulate for a given period within the rule of perpetuities, and then be paid, with such accumulations, to the legatees. The English rule on the subject would seem to be to the contrary.

2. A legacy is a gift, and a testator acting within the bounds of public policy may impose any reasonable limitation upon the enjoyment of the gift which his judgment may dictate; of which limitation creditors of the legatee have notice by the record of the will, so that they deal with the legatee at their own risk.

No. 2085. Submitted April 13, 1910. Decided Nov. 2, 1910.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia sitting as an equity court in a suit to terminate a trust created by a will.

*Reversed.*

Vol. XXXVI.—1.

The COURT in the opinion stated the facts as follows:

This cause comes here on appeal from a decree of the supreme court of the District of Columbia in an action to terminate a trust created in the last will and testament, and a codicil thereto, of one Anna Smith Mallett, deceased. The material provisions of the will and codicil are as follows:

"3. I give, bequeath, and devise to Jean Louisa, Anna Gertrude, and Robert Philo Shelton, being the children of my cousin John Consider Shelton, deceased, all of Bridgeport, Connecticut: the sum of seventy-five thousand dollars, being twenty-five thousand to each."

"10. I give, bequeath, and devise all the rest, residue, and remainder of my estate, real and personal, wheresoever and whatsoever, of which I may die possessed, to the aforesaid Jean Louisa, Anna Gertrude, and R. Philo Shelton."

Codicil: "In addition to Frank B. King, whom I have appointed executor of this, my last will and testament, I wish to appoint Wm. H. Saunders, of the firm of Wm. H. Saunders & Co., 1407 F. Street, Northwest, and George W. White, Paying Teller of the National Metropolitan Bank, cotrustees with the said F. B. King,—to hold in trust the legacies devised to Jean Louisa, Anna Gertrude, and Robert Philo Shelton,—said trusteeship to terminate when these legatees shall receive their portions of my estate.

"And it is my further will that these legacies to the said Jean Louisa, Anna Gertrude, and Robert Philo Shelton, shall be paid in full when the said Robert Philo Shelton shall reach the age of twenty-five years."

It will be observed that these instruments, read together, provide that the appellants, as trustees, shall hold the legacies of each of the appellees until Robert Philo Shelton, the youngest, shall attain the age of twenty-five years. It appears from the bill that Robert Philo Shelton was born January 12, 1896, and that only one of the appellees, Jean Louisa Shelton, is of age. One Mary L. Fairchild appears in the capacity of guardian for the two minor children. The trust, by the terms of the will,

has about ten and one-half years yet to run, at which time the eldest of the legatees, Jean Louisa Shelton, will be about thirty-five years old.

The case came before the court below upon demurrer to the complaint. On hearing the court overruled the demurrer, and, the appellants electing to stand on the demurrer, the court entered the following decree:

"1st. That so much of the codicil of June 23, 1904, to the will of Anna Smith Mallett as postpones the payment of the legacies to the complainants severally until Robert Philo Shelton shall reach the age of twenty-five years is null and void, and it appearing that the complainant, Jean Louisa Shelton, has reached the age of twenty-two years, and is entitled to have paid over to her the bequests to her under said last will, it is, therefore, further ordered that Frank B. King, executor under the last will and testament of Anna Smith Mallett, deceased, be, and he is hereby, directed to forthwith pay over to the said Jean Louisa Shelton, or to her solicitors of record, one third part of the distributable assets of said estate now in the hands of said Frank B. King, executor, in money, or if not in money, then in securities at their market value. And it is further ordered that said Frank B. King, as executor, turn over to the trustees in said codicil mentioned the remaining two thirds of the distributable assets of said estate, to be by them held in trust until such time as Anna Gertrude Shelton and Robert Philo Shelton shall respectively arrive at the age of twenty-one years, and upon the said Anna reaching the age of twenty-one years to pay over to her her interest in said estate, and upon the arrival of the said Robert at the age of twenty-one years to pay over to him his part of said estate.

"And it is further ordered that the said trustees shall, from time to time, invest and reinvest, under order of this court, the legacies belonging to the said infants, the income from which shall be paid to the guardian of said infants at such time and in such amounts as this court, sitting as a probate court, may hereafter order."

*Mrs. E. S. Mussey* and *Mr. J. J. Darlington* for the appellants.

*Mr. H. F. Woodard* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court.

The sole question presented is whether the trust sought to be created by the testator is one in restraint of alienation. The English rule in undoubtedly to the effect that where the testator devises property to a trustee to accumulate the income for a stated period, and then turn over the legacy, together with the income, to a legatee, the legatee may stop the accumulation as an illegal restraint upon his power of alienation. In other words, it is held that a testator cannot devise the fee, legal or equitable, to property, and withhold from the legatee the power to alienate it. This doctrine of the English courts is founded primarily upon the principle that any trust created in restraint of alienation is against the rule of perpetuities, and for the further and principal reason that creditors of the legatee should be permitted to subject the legacy to the payment of his debts.

The English rule has been followed in some of the States, and repudiated in others. Many of the States, however, have statutes which permit the legatee to terminate the accumulation at any time after he reaches the age of twenty-one years. The Supreme Court in *Nichols* v. *Eaton*, 91 U. S. 716, 23 L. ed. 254, seems to have departed from the English rule, to the extent of upholding the power of the testator, to create such a trust when it does not come within the rule of perpetuities. The court while reserving the right to announce a different rule in a case arising in a State where the English rule has been adopted and followed, clearly establishes principles for the guidance of the Federal courts, which are binding on the courts of this District. In that case there was a device to pay a son of the testator the income of certain property during his lifetime, with the provision, however, that, if he should alienate or dispose of the income to which he was entitled under the trusts of the will, or

if, by reason of bankruptcy or insolvency, or any other means whatsoever, the income could no longer be personally enjoyed by him, but would become vested in or payable to some other person, then the trust, or so much thereof as would so vest, should immediately cease and determine; and in that event, during the residue of the life of such son, that portion of the income of the trust fund should be paid to the wife and children of such son, and, in default of any objects of the last-mentioned trust, the income was to accumulate in augmentation of the principal fund. The son remained single, and became a bankrupt; and the assignee in bankruptcy sought to have the income turned over to him as part of the bankrupt's estate for the benefit of his creditors.

The court in holding that the testator had the power to so provide for an accumulation of the income, even to the prejudice of the rights of the creditors of the legatee, said: "But, while we have thus attempted to show that Mrs. Eaton's will is valid in all its parts upon the extremest doctrine of the English chancery court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner. We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a *necessary* incident to a life estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached, as a necessary incident to such enjoyment. This doctrine is one which the English chancery court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine that the owner of property, in the free exercise of his will

in disposing of it cannot so dispose of it but that the object of
his bounty, who parts with nothing in return, must hold it sub-
ject to the debts due his creditors, though that may soon deprive
him of all the benefits sought to be conferred by the testator's
affection or generosity, is one which we are not prepared to an-
nounce as the doctrine of this court.  If the doctrine is to be
sustained at all, it must rest exclusively on the rights of credit-
ors.  Whatever may be the extent of those rights in England,
the policy of the States of this Union, as expressed both by their
statutes and the decisions of their courts, has not been carried
so·far in that direction."

If a testator can provide a contingency whereby a life estate
can cease during the life of a beneficiary, to the prejudice of
the creditors of such beneficiary, and be allowed to accumulate,
it is not clear why a testator may not provide that a legacy may
accumulate for a given period within.the rule of perpetuities,
and then be transferred to the object of his bounty.  Especially
is the reason for vesting such power in the testator irresistible
where, as in the present case, the appellees are distant relatives,
with no claim whatever upon the bounty of the testatrix, and
where no rights of creditors intervene.  We are unable to un-
derstand why the broad equitable principles announced in *Nich-
ols* v. *Eaton, supra,* should not be applied to the present case.

The learned justice in the court below in his opinion sought
to distinguish the present case from one where the beneficiary
has a limited estate with remainder over.  He said:  "There
can be no question but what the testatrix might have provided
by her.will that these legatees should take a legacy of $25,000
each, with its accumulation, payable when the youngest was
twenty-five years of age if they should be then living, other-
wise to be paid to other parties, and in that event the title would
not have been vested until that time, but would have been con-
tingent on their survival.  But where the legacy is vested and
the trust is to accumulate the fund until a definite time, though
not beyond the time allowed by the rule against perpetuities,
the legatee when he becomes of age may take the fund at his
election, thus destroying the trust for accumulation."  The in-

come of a fixed legacy during the life of the life tenant for the express purpose of the bequest, is as absolutely vested as a fixed legacy devised to a legatee to be turned over to him at a given date. While the rights of the legatees absolutely vest on the death of the testator, we can perceive no sound reason why the testator, acting within the limitations of the rule against perpetuities, may not provide as a condition of the gift that it shall be transferred to the beneficiary at a future date.

In *Rhoads* v. *Rhoads*, 43 Ill. 239, the court considering a devise similar to the one here in question, said: "We are at a loss to perceive, if a testator can select the objects of his bounty, why he cannot also prescribe the time and mode in which that bounty shall be enjoyed; provided, always, in so doing, he contravenes no well-recognized and admitted principle of public policy, or stubborn rule of right. From the earliest times courts of justice have set themselves against such a disposition of property by will as would have the effect to tie up the land and capital of the country, obstructing thereby the free and active circulation of property, checking the improvement of the land and rendering its acquisition difficult, and in short, to every disposition of it savoring of a perpetuity, which the law abhors. Yet, notwithstanding this, it has never been denied, so far as we are advised, that an executory limitation of a life or any number of lives in being, and twenty-one years afterward, is valid. Can it be doubted that a testator with a family of children, some of them grown, married, and settled in life, and others of them infants, may devise his estate to executors with power to sell and convert it into money to be put at interest, and so remain until the youngest child, then not one day old, shall arrive at full age, and then the fund to be divided equally among all the children? In such case, which is but an ordinary limitation in strict settlement, no court would hold that it was void for remoteness, yet the time of enjoyment by the beneficiaries is more remote than that fixed by this will."

None of the reasons for the English custom prevail in this country. As to the legatee, he has no such claim upon the bounty of the testator as will require a court in equity and good

conscience to subvert the will of the testator and turn a legacy over to perhaps a profligate or wasteful legatee when such a contingency has been wisely provided against in the will. The legacy is a gift, and no good reason is apparent why a testator acting within the bounds of public policy may not impose any reasonable limitation upon the enjoyment of the gift which his judgment may dictate. As to the creditors, the will is a matter of record, notice to all persons of its terms and conditions, and whoever elects to extend credit to a suspended legatee does so at his risk, and cannot be heard to complain.

The decree is reversed, with costs, and the court is directed to enter an order vacating the decree and dismissing the bill.

*Reversed.*

An application of the appellees for an appeal to the Supreme Court of the United States was allowed November 4, 1910.