In the Matter of the Estate of LEO G. FROMAN, Deceased.

Surrogate's Court, New York County, August 24, 1937.

*House, Grossman, Vorhaus & Hemley,* for the petitioner Edith Froman, widow of testator.

*Frackman & Robins [Joseph H. Robins* of counsel], for the respondents Florence Lewitus and others.

*Henry Goldstein [Harry N. Newman* of counsel], for Leo Adler, sole surviving administrator *c. t. a.,* respondent.

*Joseph A. Gavagan,* special guardian.

FOLEY, S. In this proceeding a construction of the will is sought. It was originally brought by the widow of the testator. The latter died on January 28, 1937. His widow died on May 12, 1937. Her executor has been substituted in her place by an appropriate order. He seeks, in effect, an adjudication of this court decreeing total invalidity as to the trusts created by the will

in order that her estate may obtain her intestate share of this estate, which would be $10,000, plus one-half of the balance of the property. As his other distributees and next of kin the testator left surviving four sisters and a brother.

If the continuance of the proceeding depended exclusively upon the right of the widow and of her estate to share in the property of her husband, a dismissal would have been directed because of the entire absence of any such right of the widow or her estate. The testator gave to her certain property outright and the income of a trust of the permissible statutory share of his estate which effectively barred her from exercising her right of election under the provisions of section 18 of the Decedent Estate Law. She did not reject the testamentary benefits and did not attempt to assert a right of election under that section. Under its terms the right of the surviving spouse to elect is a personal one, excepting as to infants and incompetents. Such right, if not previously exercised, is lost upon the death of the surviving spouse and does not pass to the executor or administrator of the estate. (Note of the Decedent Estate Commission to section 18, Decedent Estate Law, Combined Reports, p. 189; *Matter of Coffin*, 152 Misc. 619.)

A further bar to the right of her executor to contest the validity of the trusts is found in the language of the will. The eighth paragraph directs that the provisions for the benefit of the widow " are in lieu of all dower, thirds or any other rights which she may have in my estate." It has been repeatedly held that where a clause of similar import is contained in the will and the widow accepts the testamentary benefits, she is not entitled to share in the distribution of any property passing by intestacy. (*Matter of Silsby*, 229 N. Y. 396; *Matter of Hungerford*, 135 Misc. 385; *Matter of Hodgman*, 140 N. Y. 421; *Matter of Benson*, 96 id. 499; *Chamberlain* v. *Chamberlain*, 43 id. 424.)

The surrogate, accordingly, determines that the estate of the widow is forever excluded from participating in any portion of the testator's estate if intestacy as to any part of it be hereafter decreed. Her executor or his successor is not a party required to be cited in any future proceeding either by way of accounting or construction, excepting the final accounting, which may determine the balance of income due her as life tenant.

The lack of interest, however, of the widow's estate does not obviate the necessity for a present construction of the will because of the fact that other parties actually interested have requested in their answers an interpretation of the meaning and effect of the provisions relating to certain trusts created by the will.

Without discussion at the moment of the division of the various trusts, concerning which alleged invalidity arises, it appears that three general trusts were created by paragraphs fifth, sixth and seventh. Under paragraph fifth a fund of $10,000 was given to the trustee with directions to pay the income to the widow for life. Upon her death the income was to be paid in four equal parts to each of the four sisters during their lives. As to the trusts for three of the sisters, Gertrude, Hannah and Rose, the testator directed that the share of each should vest in their issue as remaindermen with provision for the retention by the trustee during minority of the portion of the fund which might vest in an infant.

These trusts are clearly valid. The statutory prohibition against unlawful suspension of the power of alienation was not violated. The trust term consisted of (1) the life of the widow, (2) the life of the designated sister, with remainder to her issue. The further direction for the withholding of the payment of principal during the minority of an infant who might be issue of the respective life tenant created no illegality. Vesting will occur at the death of the second life tenant. Possession only was postponed. The suspension of the full power to alienate during minority resulted only from the disability of infancy. (*Matter of Trevor*, 239 N. Y. 6, at p. 16; *Matter of Carroll*, 274 id. 288, at p. 303.) There were no gifts over in the event of the death of the minor before arriving at majority. The possibility of the invalidity of the ulterior gifts cannot affect the legality of these trusts. Upon that phase of the pending proceeding, which involves a gift for two successive lives with remainder to the issue of the secondary life tenant to be retained during minority in the case of infants, there is almost an exact parallel with the terms of the will in *Matter of Trevor* (*supra*). In that case the Court of Appeals sustained the legality of the original dispositions, although there were alternative and contingent gifts over, which might have ultimately proved to be violative of the statutes against perpetuities. Validity is, therefore, found.

The trust for the sister Florence differed from those for the benefit of the other sisters by the elimination of any gift of the remainder to her issue. Upon her death her share was directed to be held in further trusts for the benefit of her three sisters during their separate lives with gifts over upon their respective deaths to their issue in form similar to the trusts created for each of said sisters.

It is urged that there should be a present determination of invalidity because this share will have passed through the life of the widow, through the life of Florence, and a possible third life of one of her sisters, or a possible fourth and fifth life if any of them should survive her and die without children.

In order to carry out as far as possible the testator's intent we may sustain the trust for the first two lives — those of the widow and the sister Florence. What may happen thereafter is now academic. His plan called for the treatment of his four sisters on terms of equality. Each was to receive an equivalent share of the income. To destroy the trust for Florence would unbalance the benefits for each of the sisters and nullify the obvious purpose of the testator. The future estates, the validity of which are now in question, are contingent and cannot take effect until the termination of the life of Florence and the ascertainment at that time of the actual facts of survivorship. "The court deals not with academic or abstract questions as to what may happen. * * * The will is to be read in the light of what has happened, not so much for the purpose of determining its validity as for the purpose of seeing clearly by such light what is possible in the way of separating the good from the bad." (*Matter of Trevor, supra,* at p. 18. See, also, *Matter of Mount,* 185 N. Y. 162.)

A similar conclusion denying a present determination of the validity or invalidity of the ulterior gifts over for the lives of Gertrude, Hannah and Rose, in the event of their dying without child or children surviving, must likewise be reached. These contingencies are extremely remote at the present time. Their present disposition is academic. The process of separating the concededly valid provisions of these trusts from those which may be tainted by illegality is reasonably simple. The trusts are not joint and entwined, but are clearly separable and divisible. (*Matter of Colegrove,* 221 N. Y. 455; *Leach* v. *Godwin,* 198 id. 35; *Vanderpoel* v. *Loew,* 112 id. 167.) Strong evidence of the testator's intent to treat these interests as severable is found in the clear-cut separation of the shares of the respective persons as events successively may occur. The modern trend of the authorities to sustain, in so far as possible, the intent of the testator and to separate the good from the bad by the process of judicial surgery finds appropriate application to the provisions of this will. (*Matter of Lyons,* 271 N. Y. 204; *Oliver* v. *Wells,* 254 id. 451; *Matter of Gallien,* 247 id. 195; *Matter of Trevor,* 239 id. 6; *Matter of Horner,* 237 id. 489; *Carrier* v. *Carrier,* 226 id. 114; *Matter of Colegrove,* 221 id. 455; *Kalish* v. *Kalish,* 166 id. 368.)

The primary objects of the testator's bounty were his widow and his four sisters. The widow's life is terminated, but the purpose of the maker of the will to provide for his sisters for their lives is clearly revealed and should be given effect. A determination of total intestacy would disrupt and destroy his primary plan and enable the brother, who is excluded from any benefits under

the will, to share in the estate. To his credit it should be stated that, although cited, he has not appeared or attempted to attack the testamentary plan. The four sisters are united in their desire to sustain the validity of the life estates given to them and of the remainders of such as may have issue.

I, accordingly, hold that the secondary life estates of the sisters under paragraph fifth of the will are valid.

The preliminary dispositions contained in paragraph sixth are likewise valid. In effect they parallel the provisions of paragraph fifth except that instead of creating a trust for a specified pecuniary amount the fund consists of one-half of the residue. The provisions of the will again evidence separability and divisibility of the various secondary trusts. The primary life tenant was the widow, and the secondary life tenants, as under paragraph fifth, were the four sisters of the testator.

Under paragraph seventh, which disposed of the remaining half of the residue, the provisions are substantially similar to the previous paragraphs excepting that the widow was not the primary life tenant of these trusts. The first takers in each of these equal and severable shares were the four sisters. With the elimination of the life of the widow from these trusts, validity is assured even as to directions for the secondary life of a sister. The primary life estates for the benefit of each of the sisters under this paragraph may be preserved. As to a trust created for the benefit of a sister with remainder to her issue, the will is clearly valid if issue survive such sister. The secondary life estates as to certain parts of the trusts, particularly upon the death of Florence or upon the death of any of the sisters, Gertrude, Hannah and Rose, without children, may likewise be saved. There is presented as to certain of these estates a simple example of a lawful trust for the benefit of A for life, then to B for life and then to the issue of B, against which no objection could logically be urged. Here, again, a determination as to the illegality of further ulterior gifts over should properly await the termination of the second successive life.

Submit decree on notice construing the will accordingly.