**GERTMAN v. BURDICK et al.**

**BURDICK et al. v. SAME (two cases).**

**Nos. 7773–7775.**

United States Court of Appeals for the District of Columbia.

Decided Nov. 26, 1941.

George C. Gertman, of Washington, D. C., for George C. Gertman, guardian ad litem, appellant in No. 7773 and appellee in Nos. 7774 and 7775.

E. Barrett Prettyman, of Washington, D. C. (F. Gloyd Awalt and Raymond Sparks, both of Washington, D. C., on the brief), for appellants in No. 7774, and for appellees other than Charles Lalor Burdick and Chemical Bank & Trust Co. in No. 7773, and for appellees other than George C. Gertman, guardian ad litem, in No. 7775.

Spencer Gordon, of Washington, D. C. (Fontaine C. Bradley, of Washington, D. C., on the brief), for Charles Lalor Burdick and Chemical Bank & Trust Co., trustees, appellants in No. 7775 and appellees in Nos. 7773 and 7774.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

These three appeals are concerned with certain provisions of a testamentary trust. Willard L. Lalor, the deceased, made a number of bequests. Then he directed that the remainder of his estate be put in trust until 21 years after the death of the survivor of Ruth and Esther Lalor (nieces). Trust income is to pay several annuities. The remainder of the trust income "is to be reinvested by the Trustee for the increase and benefit of this trust fund". At the expiration of 21 years after the two lives in being, the trust is to cease, and the principal and accumulations are to be divided into five parts; a part is to go to the lawful issue of each of the named nieces, and a part to each of three named relatives, or if deceased, to their lawful issue.[1]

---

[1] A more complete recitation of the language of the will follows:

"Fifth—All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and wheresoever situated, of which I shall be seized and possessed or to which I shall in any way be entitled at the time of my death, I give, devise and bequeath to my Trustee hereinafter named, In Trust Nevertheless, to invest, reinvest and keep the same invested for the period of twenty-one (21) years after the death of both my nieces, Esther Lalor and Ruth Lalor, and during such trust period to collect, recover and receive the issues, income, interest and profits thereof, and after deducting the commissions of the Trustee and the proper and necessary expenses of the administration of the trust, to make payments from the same in quarterly installments of equal amount as follows, viz:

"[a series of annuities]

"I—The rest and remainder of the income, including the share of income of my brother and sister when they die and of any nephew or niece or friend referred to in the foregoing sub-paragraphs * * * who may die during the trust period, except as hereinafter provided in the case of nephews and nieces leaving lawful issue surviving, is to be reinvested by the Trustee for the increase and benefit of this trust fund.

* * *

"Upon the expiration of the period of twenty-one (21) years after the date upon which the survivor of my said nieces, Esther Lalor and Ruth Lalor shall have died, this trust shall terminate and my Trustee shall forthwith assign, transfer and pay over the principal and accumulations of said trust fund, or the property into which the same may have been converted, or the proceeds thereof, as follows, viz.:

"J—To my nephew, Charles Lalor Burdick, one-fifth (⅕) thereof, and if he be then deceased, to his lawful issue per stirpes and not per capita.

■ The trustees asked for a construction of, and instructions under, the will. The adults interested in the testamentary disposition were named defendants. The District Court appointed a guardian ad litem to represent the infants and unborn issue. The Court found three main questions timely. (1) Do the future interests created violate the rule against perpetuities, i. e., will any of the future interests remain "unvested" 21 years after lives in being? The District Court said no. That answer has not been questioned upon appeal; we believe that the conclusion reached is clearly sound. (2) Does the will creating the future interests violate the statutory provision limiting the period for which the power of alienation may be suspended? The District Court said no. We believe that this answer is correct and a brief discussion will follow. (3) In this jurisdiction, is the provision that this amount of income be accumulated for lives in being plus 21 years valid? The District Court said no. Most of our discussion will be devoted to this question.

In Anna Lalor Burdick, et al., v. Trustees, et al. (No. 7774), the adult beneficiaries question the Court's holding that the trust does not violate the statutory provision limiting the period for which the power of alienation may be suspended; the appellees are the trustees and the guardian ad litem representing the infants and unborn issue. The applicable statute is Section 1023 [2] which reads: "Except in the case of gifts or devises to charitable uses, every future estate, whether of freehold or leasehold, whether by way of remainder or without a precedent estate, and whether vested or contingent, shall be void in its creation which shall suspend, or may by possibility suspend, the power of absolute alienation of the property, so that there shall be no person or persons in being by whom an absolute fee in the same, in possession, can be conveyed, for a longer period than during the continuance of not more than one or more lives in being and twenty-one years thereafter." This trust is to exist for two lives in being and 21 years, and then it is to cease. It appears that the trust exactly coincides with the period the statute allows for the suspension of alienation.

Nonetheless counsel states that the key words are, "may by possibility suspend", "absolute alienation", and "absolute fee", that the period of the trust uses up the lives in being plus 21 years, and that, then, the taker might be an infant, who would be a person incapable of alienating an absolute fee. Counsel concludes that this will, therefore, violates Section 1023.

The District Court thought that the power of the trustees to sell the items of the trust and to reinvest in other property would take this will out of the prohibition of the statute. This conclusion emphasizes the idea that the statute is interested in preventing a long tying up of a particular piece of property (a lot or a security) rather than a segment of wealth (a trust corpus). [3] The District Court added that any failure to alienate after the period of the trust would be due to the taker's legal status—not to any provision of the will; therefore, the trust does not contravene the alienation statute.

■ We do not pass upon the merit of the first reason for we are of the opinion that the second is more than sufficient to answer counsel's argument. To accept the contention made by counsel would be to put a new wrinkle into the law of future interests. A testator or grantor could never be sure of the majority, the sanity, and all other conditions which affect capacity to sell property, of all the unknown persons upon whom he wished his estate eventually to devolve. The construction argued for would make void, in its creation, any future estate which was to take effect immediately at the expiration of the statutory period, for one of the takers might have, for a day, incapacity to convey. In fact, it would invalidate future interests meant to go over in fee simple well within the permitted period; for example, a devise from father to son for life, remainder over to the son's children, would be bad at the outset for no better reason than there is a possibility that one of the son's children would be

"[an identic provision for another nephew and a niece]

"M—To the lawful issue per stirpes and not per capita of my niece, Ruth Lalor, one-fifth (⅕) thereof.

"[an identic provision in respect of the issue of Esther Lalor]."

[2] D.C.Code, Tit. 25, § 112. This provision is made applicable to personal property. D.C.Code, Tit. 25, § 283 (Section 1036).

[3] Compare 1 Bogert, Trusts and Trustees (1935) § 219.

non compos mentis for over twenty-one years. This has never been the law. We cannot believe that Congress made it the law when it chose the wording of Section 1023, and for forty years this court has never suggested that this was the intent of Congress.[4] We do not purpose making it the law now.

The purport of the statute is the prevention of an undue suspension of alienation; it sees to it that every piece of property is capable of being alienated in fee form within or at the termination of a period of 21 years after lives in being. Counsel has made the clause, "so that there shall be no person or persons in being by whom an absolute fee in the same, in possession, can be conveyed," a highly restrictive requirement by applying it, at the end of the trust period, to the ultimate takers. To use counsel's technique of noting key words, "*persons*" and "absolute fee * * * can be conveyed", it is revealed that the clause does not make the statute harder to satisfy but rather makes the statute inapplicable to many situations. The provision is, in many statutes, a separate sentence which defines suspension of alienation. "The absolute power of alienation is suspended, when there are no *persons* in being by whom an *absolute fee* in possession *can be conveyed.*"[5] (Ital. supplied.) Thus, where several people hold vested, alienable, future and present estates comprising the whole fee, there is no suspension of alienation.[6] There are persons in being who, if they so desire, can get together and

convey an absolute fee in possession; since there is no suspension of alienation, it is unnecessary to ascertain how long it will last.

 Now consider how definitely this testamentary disposition meets the statute. This will sets up a trust which is to cease after two lives in being and 21 years. For two lives in being and 21 years alienation *may* be suspended, but at that time all of the strings which the testator attached to his property will be severed. All future estates will be terminated. The property will be back in absolute fee form. The trustees will be persons in being who will have not the mere opportunity of conveying fee simples —they must. The testator did not intend to, the will cannot, suspend alienation longer. This is another way of saying, we hope rather graphically, what the District Court said, that you look to the instrument. The capacity of the takers is irrelevant.[7] This is the usual situation where a statute, be it concerned with contracts or murder, reads with the implication "assuming legal capacity". This testamentary devise clearly does not fall within the prohibition of Section 1023.

We now come to the important question for decision. It is the question raised in Gertman, Guardian, et al., v. Trustees et al. (No. 7773), and Trustees v. Anna Lalor Burdick et al. (No. 7775). In the first, the guardian ad litem is the appellant, and the appellees are the trustees and adult beneficiaries. In the second, the trustees have appealed to be sure that

---

[4] For example, if the contention made in this case were accepted, the testamentary trust in Wills v. Maddox, 45 App. D.C. 128, certiorari denied, 240 U.S. 640, 37 S.Ct. 113, 61 L.Ed. 541, was bad. Yet in neither the printed argument of counsel or the opinion of the court is any reference made to Section 1023. Likewise, Hazen v. American Security & Trust Co., 49 App.D.C. 297, 265 F. 447. See McDonald v. Maxwell, 56 App.D.C. 287, 12 F.2d 822. Compare In re Froman's Estate, 165 Misc. 400, 300 N.Y.S. 1088.

See comment on this section in 2 Simes, Law of Future Interests (1936) § 573. Under Simes' interpretation, counsel having conceded that the instant will does not violate the rule against perpetuities, they would also have to concede that the will is without Section 1023, because no indestructible interests are created beyond lives in being and 21 years inasmuch as

no future interests are created beyond that time.

[5] New York Real Property Law, Consolidated Laws, c. 50, § 42. The section continues: "Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, * * * for a longer period than during the continuance of not more than two lives in being at the creation of the estate; * * *". This statute has served as a model for many states. 1 Bogert, Trusts and Trustees (1935) § 219.

[6] Beardsley v. Hotchkiss, 96 N.Y. 201, 214; Adams v. McKee, 121 Misc. 215, 200 N.Y.S. 765; 21 R.C.L. Perpetuities, § 79.

[7] Beardsley v. Hotchkiss, 96 N.Y. 201, 214, 215; In re Murphy's Estate, 99 Mont. 114, 43 P.2d 233. Language in Re Pforr's Estate, 144 Cal. 121, 77 P. 825, 827. Chaplin, Suspension of the Power of Alienation (1891) § 116.

all issues are before this court;[8] the adult beneficiaries and the guardian ad litem are the appellees. The question: is the provision of this trust directing the accumulation, through re-investment, of a rather large amount of income, for a period of lives in being plus 21 years, valid?

We have no statute on the subject. The case law offers some guides, some persuasive ideas, and some helpful history, but there is no holding that we must accept within the meaning of stare decisis.

The English common law on the subject is generally regarded as the Thellusson case[9] which maintained the validity of such a provision. There were two other questions in the case, but the Lord Chancellor's opinion to the House of Lords was devoted precisely to the problem before us. The Lord Chancellor made it clear that the question was to be answered under law and equity, not legislative policy. He pointed out that alienation could be postponed for any number of lives and then said, "If the law is so as to postponing alienation, another question arises out of this will; which is a pure question of equity: whether a testator can direct the rents and profits to be accumulated for that period, during which he may direct, that the title shall not vest, and the property shall remain unalienable; and, that he can do so, is most clear law."[10] Upon his motion the decree was affirmed. Subsequently, this has been such clear law that no court on its own has ever fixed a period limiting accumulations other than the one that equalled the rule against perpetuities. It has been such clear law that, apparently, no court before the action in this case has ever knocked down a provision accumulating income for lives in being plus 21 years.

When England wanted a shorter period, it acted through its legislature. In fact, Parliament passed a statute in 1800[11] between the High Court of Chancery's opinion in 1799 and the House of Lords' affirmance in 1805. Parliament set four alternative maximum periods. The Act is not entirely a happy one. The period to be applied to any individual case is the one most fitting.[12]

The Thellusson case came too late to be a part of the common law that this jurisdiction adopted. The 1929 Code for the District provides that the common law and equity in force in 1901 shall remain in force.[13] The 1901 Code for the District begins, "The common law, all British statutes in force in Maryland on the twenty-seventh day of February, eighteen hundred and one, the principles of equity * * * shall remain in force * * *".[14] February 27, 1801, is the date that the Organic Act of the District was approved.[15] Section 1 of that act provided that the law of Virginia as it then existed should apply to the part of the District ceded by that state (the County of Alexandria), and that the law of Maryland as it then existed should apply to the part of the District ceded by that state (the County of Washington). Section 3 established a circuit court of the District of Columbia. Section 5 gave that court jurisdiction, inter alia, over all cases in law and equity between parties where one of them was a resident of the District. Thus Congress assumed judicial jurisdiction over the District in 1801 and at that time took over the Maryland common law for the present confines of the District of Columbia.

The question remains what British common law had Maryland taken over as of

---

[8] For example: The guardian ad litem appealed from the decision below holding the accumulation provision invalid. The trustees have also appealed on this issue. The guardian ad litem argues further, however, that if the District Court is correct, then the money should go to the beneficiaries rather than to the heirs. The trustees take issue with this latter argument.

[9] Woodford v. Thellusson, 4 Ves. 227, 31 Eng. Rep. 117; 11 Ves. 112, 32 Eng. Rep. 1030.

[10] 11 Ves. 112, 146, 32 Eng.Rep. 1030, 1043.

[11] 39 and 40 Geo. III (1800) c. 98.

[12] "The Legislature has left me at large to apply one or other of those periods whichever will fit the case. What it has said according to the cases about which there is no doubt is, that you cannot apply more than one, and that you must choose that one which fits the case. You are not to choose the one which will give the longest period of accumulation, you are not to choose the one which you may suppose would best effectuate the intention, but you are to take the one that actually fits the intention as declared." J. Kekewich in Re Errington, 76 L.T.R. 616, 617 (Ch. 1897).

[13] D.C.Code, Tit. 1, § 21.

[14] 31 Stat. 1189.

[15] D.C.Code (1940 ed.) p. xxxiii.

that time. Section 3 of Maryland's Original Declaration of Rights (1776) provides: "That the inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law, and to the benefit of such of the English statutes, as existed at the time of their first emigration, and which, by experience, have been found applicable to their local and other circumstances, and of such others as have been since made in England, or Great Britain, and have been introduced, used and practised by the courts of law or equity; * * *".[16] The Maryland Constitution of 1867 in force today in that state is substantially the same.[17] Roughly, the English decisions that have been looked to under this declaration are those before the colonization of Maryland.[18] Thus the common law of the District clearly does not embrace an English case of 1799 or 1805. One does not reach the point of applying the repugnant-to-our-conditions test to ascertain whether this particular case is a part of our common law.

It is even clearer that the Thellusson Act is not a part of our common law. Acts of Parliament had to become a part

of the judicial heritage to be taken over as part of the English common law. Maryland's original declaration of rights and its present constitution [19] set the critical date for statutes even more specifically than for court decisions, clearly excluding an act of Parliament 14 years after the Declaration of Independence.

Two significant guides, however, are afforded us by the Thellusson case and statute. The British common law for Britishers was that a testamentary provision for accumulating income for as long as future estates could remain not vested was good. When the people desired a shorter period for accumulations, it was the legislative body that took action.

These two propositions have been repeated in this country's legal history. Here, however, because of our 48 states, and dependencies, we are not limited to one case and one statute.

It has been generally, if not universally assumed, that the common law in the United States permitted accumulations for 21 years after lives in being.[20] This was certainly the assumption of 13 state legislatures which passed statutes creating a shorter period.[21] This assumption is supported by

---

[16] 3 Thorpe, American Charters, Constitutions, and Organic Laws (1909) 1686, 1687.

[17] "That the inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; * * *". Art. 5, Declaration of Rights, Constitution of Maryland, I Ann.Code of Md. 26.

[18] State v. Buchanan, 5 Harr. & J., Md., 317, 358, 9 Am.Dec. 534.

[19] See footnote 17. Maryland's Original Declaration of Rights (1776) stated that her people were to have the benefit of English statutes existing at the time of their emigration which were applicable, and also those enacted since which had been used by the courts. The Declaration in the Constitution of 1867 provides the people with the benefit of the English statutes in existence July 4, 1776, which have been found applicable and have been used by the courts. See 1 Bogert, Trusts and Trustees (1935) § 215, p. 617. See De Forest v. United States, 11 App.D.C.

458, and Tyner v. United States, 23 App. D.C. 324, 359.

[20] 21 R.C.L. Perpetuities, §§ 82, 83; 48 C. J. Perpetuities, § 80; 1 Bogert, Trusts and Trustees (1935) § 215; 1 Scott, Trusts (1939) § 62.11; Gray, The Rule Against Perpetuities (3rd ed. 1915) § 671; 2 Simes, Law of Future Interests (1936) § 589; 1 Trusts, Restatement of the Law, A.L.I. (1935) § 62, comment 1; 2 Tiffany, Real Property (3rd ed. 1939) § 412; 54 Harv.L.Rev. 147 (1940); 40 Col.L.Rev. 1430 (1940); 54 Harv.L.Rev. 839 (1941).

[21] Code of Ala. (1940) Tit. 47, §§ 146–8; Ariz.Code Ann. (1939) 71-118–71-120; Cal.Civ.Code (Deering, 1937 §§ 724–6); Ill.Rev.Stats. (Bar Ed. 1941) c. 30, § 153; Ind.Stat.Ann. (Burns, 1933) §§ 51-102, 51-103; Mich.Comp.Laws (1929) §§ 12956–60; Minn.Stat. (Mason, 1927) §§ 8066–70; Mont.Rev.Codes (Anderson & McFarland, 1935) §§ 6709–13, 6715; N.Y.Personal Property Law (Consol.Laws, c. 41) §§ 16–17; N. Y. Real Property Law (Consol.Laws, c. 50) §§ 61–3; N.D.Comp.L. Ann. (1913) §§ 5290–4, 5296; Pa.Stat. Ann. (Purdon, Supp.1940) Tit. 20, §§ 3251–2; S.D.Code (1939) §§ 51.0301–51.-0307; Wis.Stat. (1939) §§ 230.36–230.40. Nevada is sometimes listed as the 14th state. Its provision, however, is limited to spendthrift trusts. Nev.Stat. of 1939, c. 86, § 5(i).

the tenor of the case law.[22] True our attention has been called to no case which directly held and applied a rule of lives in being plus 21 years. Undoubtedly this is largely due to the accepted-in-practice common law which deterred litigation on the point.[23] Likewise, our attention has been called to no case which, in the absence of statute, directly rejected a rule allowing a period of lives in being plus 21 years. Obviously, then, the courts have never adopted a rule prescribing another period of time.

The tenor of our case law is well illustrated by the case of Fitchie v. Brown.[24] The testator, living in Hawaii, made a will which gave certain pecuniary legacies; the will directed that the residue of the estate was to be put in trust "for as long a period as is legally possible" under the statute; trust income was to go to some forty odd annuitants and then to their heirs with three exceptions; at the termination of the trust, the trust fund was to go over equally to those then entitled to the annuities. As it turned out, there was surplus income over the annuities for which the will made no provision. The Supreme Court of Hawaii held the trust valid. The Court directed the trustees to pay the annuities during the respective lives of the annuitants and thereafter to their heirs until 21 years after the death of the survivor, then to divide the trust fund and its accumulated income as provided by the will. There was an appeal to the United States Supreme Court. Its opinion began, "In the view we take of the case there are but two questions necessary to be noticed, and they involve the validity of the trust and the disposition of the surplus income." [25] The Court proceeded to hold the trust valid, deciding that while there was no statute applicable to the length of trusts in Hawaii, as the testator suggested, he intended it to exist as long as legally possible which under the common law is lives in being plus 21 years. The lives in being that are to be used in this case are the annuitants; forty odd is not too large for a valid limitation. Thus the trust fund is to be distributed 21 years after the survivor of forty odd annuitants. Meanwhile, "we think the surplus, after paying annuities, must accumulate as part of the trust estate until the time arrives for the distribution of that estate, and that such accumulation must then be distributed as a part thereof to those who will then have the right to take the estate as provided for in the will." [26]

The case which most fully addresses itself to the problem before us, Moeller v. Kautz,[27] held accumulations for lives in being good and stated that the general rule for accumulations was identical in length to the rule against perpetuities. It further stated that this general rule was to be applied except in the most unusual situations. It is not clear that the instant case would be one of those unusual situations.

▮ In view of the common understanding, and the judicial acceptance, including this court[28] (albeit not in fully discussed

[22] Fitchie v. Brown, 211 U.S. 321, 29 S.Ct. 106, 53 L.Ed. 202 (discussed infra); Dahlgren v. Pierce, 6 Cir., 270 F. 507, 515; Kasey v. Fidelity Trust Co., 131 Ky. 609, 115 S.W. 739, 742; Hussey v. Sargent, 116 Ky. 53, 75 S.W. 211, 215, 216; Pelton v. First Savings & Trust Co., 98 Fla. 748, 124 So. 169; First Camden Nat'l Bank & Trust Co. v. Collins, 114 N.J.Eq. 59, 168 A. 275; In re Bates' Will, 168 Misc. 526, 5 N.Y.S.2d 628; Kimball v. Crocker, 53 Me. 263; Connecticut Trust & Safe Deposit Co. v. Hollister, 74 Conn. 228, 50 A. 750; Hoadley v. Beardsley, 89 Conn. 270, 93 A. 535; Wilson v. D'Atro, 109 Conn. 563, 145 A. 161; Toms v. Williams, 41 Mich. 552, 2 N.W. 814, 818. Cf. Scott v. West, 63 Wis. 529, 24 N.W. 161, 180, 25 N.W. 18.

[23] Compare the Lord Chancellor's remark in his statement to the House of Lords in Thellusson v. Woodford that the late Chief Justice of the Court of King's Bench did not think the questions in the case "fit for argument" in that they were so well settled.

[24] 211 U.S. 321, 29 S.Ct. 106, 108, 53 L.Ed. 202.

[25] Id., 211 U.S. at page 327, 29 S.Ct. at page 108, 53 L.Ed. 202.

[26] Id., 211 U.S. at pages 334, 335, 29 S.Ct. at page 110, 53 L.Ed. 202.

[27] 112 Conn. 481, 152 A. 886.

[28] King v. Shelton, 36 App.D.C. 1, affirmed 229 U.S. 90, 33 S.Ct. 686, 57 L. Ed. 1086. While the issue before the court was whether the beneficiary of a vested, absolute legacy could terminate the trust and obtain immediate enjoyment (Compare Claflin v. Claflin, 149 Mass. 19, 20 N.E. 454) this court discussed trust problems in their broader background. In this discussion it said, "If a testator can provide a contingency

direct holdings) of a rule permitting accumulations for as long as the period of the rule against perpetuities, we have no hesitation in saying that has been the common law of this country and of this jurisdiction.[29]

Our discussion cannot stop here, however. The common law is imbued with reason, sound policy, and a capacity for growth. It is claimed that the old law on accumulations is repugnant to the public policy of the 5th decade of the 20th century. It is argued that the accumulation in the instant case is so big and is to last so long that it should be invalidated. We are told that under the force of logic, of history, of custom, of justice, of morals, of social welfare,[30] we must declare the common law for today differently than it was declared for Britishers in the Thellusson case. We are told that this is a model case for bold action on the part of a court,[31] that we should free ourselves from the stinted legalistic reasoning of the 18th century. On this challenge further considerations are relevant.

Let us assume for a moment that we are to set some limitation on the size and length of accumulations on realty and personalty. What are our standards? We must turn to the statutes, for the courts have used no period other than the rule against perpetuities. A survey of the statutes reveals that in spite of the crystallized existence of this problem for a century and a half and with the New York Act to serve as a lead for 110 years only 12 other states have placed any statutory limitation on accumulations.

First, what limit should be set on the amount of the accumulation? The statutes give no suggestion whatsoever as to where the line should be drawn, for while they have not been highly uniform in general, there has been uniformity in legislative non-action as to size.

Second, should our limit on accumulations apply both to realty and personalty? In respect of the ten "New York Acts" five apply to both,[32] four to realty alone,[33] and one to personality alone.[34] The two "Thellusson Acts" [35] apply to both. The

---

whereby a life estate can cease during the life of a beneficiary, to the prejudice of the creditors of such beneficiary, and be allowed to accumulate, it is not clear why a testator may not provide that a legacy may accumulate for a given period within the rule of perpetuities, and then be transferred to the object of his bounty." 36 App.D.C. page 6.

American Security & Trust Co. v. Blair, 63 App.D.C. 170, 70 F.2d 774. This court found testator's intention clear in respect of whom he wished to benefit by his estate; a contingency regarding disposal of excess income arose for which the will made no provision. This court directed the accumulation of the excess income for the duration of the trust believing that disposition would fulfill the intent of the testator. There was no discussion on how long income could be accumulated under the law. Compare the Lord Chancellor's line of reasoning in the Thellusson case. "But the constant course of a court of equity is to accumulate interest from time to time without a direction, and to hand over the accumulation to that person, who is to take the capital."

For the purposes of the instant case the litigation over the will of James McDonald is similar to the Blair case. McDonald v. Maxwell, 56 App.D.C. 287, 12 F.2d 822; Fulton Trust Co. v. Bank of America, 60 App.D.C. 240, 50 F.2d 1005;

McDonald v. Fulton Trust Co., 71 App. D.C. 36, 107 F.2d 237.

29 In some cases an even longer accumulation may be possible: for example, an accumulation for lives in being and 21 years until the future estates vest, with a direction to continue the accumulation for the benefit of the "vestee". Cf. Trautz v. Lemp, 329 Mo. 580, 46 S.W. 2d 135, 143. Contra, Kimball v. Crocker, 53 Me. 263. In this type of case, the doctrine of Claflin v. Claflin, 149 Mass. 19, 20 N.E. 454 (see King v. Shelton, 36 App.D.C. 1, affirmed 229 U.S. 90, 33 S. Ct. 686, 57 L.Ed. 1086) is highly relevant. See 1 Bogert, Trusts and Trustees (1935) § 215, p. 648–650, and 48 C. J. Perpetuities, § 80. Query whether an accumulation can be good for a longer period than lives in being and twenty-one years in this jurisdiction in view of our alienation provision discussed in appeal No. 7774.

30 Cardozo, The Nature of the Judicial Process, and The Growth of the Law.

31 Compare 40 Col.L.Rev. 1430 (1940).

32 New York, North Dakota, South Dakota, California, and Montana. See footnote 21 for citations.

33 Michigan, Wisconsin, Minnesota, and Arizona. See footnote 21 for citations.

34 Indiana. See footnote 21 for citation.

35 Illinois and Pennsylvania. See footnote 21 for citations.

unique Alabama Act [36] applies to property in trust for accumulation only.

Third, for what period should accumulations be good? Originally all "New York Acts" used a minority period. Two "New York Act" states, however, have had a significant history in regard to length. California in her Civil Code of 1872 followed the minority period of New York.[37] In 1929 the Code provision was amended so as to allow accumulations for the same length of time that alienation might be suspended,[38] which is lives in being or in the alternative 25 years in gross.[39] Montana has a similar history. Her Code of 1895 followed those of California and New York.[40] Ten years after California's action, Montana likewise amended her Code to provide that income might be accumulated so long as the power of alienation might be suspended,[41] which in this state is lives in being.[42] Thus we find a lengthening of the time for permitted accumulations, and a period set which coincides with another critical time limit in the field of future interests. Illinois uses the four periods of the Thellusson Act.[43] Pennsylvania has altered to ambiguity the English Act.[44] The Alabama Trusts-for-accumulations-only Act allows ten years or a minority.[45]

■ Fourth, when we choose, as a legislature would, a permissible period, shall we hold the accumulation bad only in respect of the excess? It has been uniformly held that an accumulation is bad only as to such excess where there is a statutory permissible period,[46] whereas an accumulation that violates the common law of lives in being plus 21 years is void in its entirety;[47] the latter remains the law even when you have a statutory period.[48]

Fifth, what exceptions shall we adopt? The thirteen states with statutes have differing exceptions. The list includes charities, debts, portions, stock dividends, insurance trusts.

Thus far we have assumed that we were to set some period. The difficulties outlined have been those of choosing *a* period. But has it been establishd that *we* should set *any* period? If we set no period, yet hold this trust bad, is it because it is too long, too big, or both? What guide will the next testator have in respect of what is good? It would not be a very happy policy to require each testator to write knowingly an uncertain will to be passed upon when it is too late to express further intentions.

Nonetheless it is insisted that this will is so incompatible with sound public policy that it should be voided. What are some of the elements of that public policy?

It is argued that this will injures government financing because much of our revenue today comes through wealth in circulation—excise taxes, income taxes. At the outset it would seem that if there is some place today where taxes are not large enough or do not come often enough, it would be better for the revenue law makers to solve the problem specifically than for us to correct it through indirection. It could be that the trustees are paying larger taxes than the revenue would be if the income were dispersed among the heirs or beneficiaries.

It is argued that the amount involved in this accumulation ties up too much wealth, and that it lowers the country's purchasing power which is already too small. A picture of the future size of this accumulation can be painted with gigantic

---

[36] See footnote 21 for citation.

[37] Civil Code of California, § 724.

[38] Statutes of California 1929, c. 143, p. 276.

[39] Civil Code of California, § 715.

[40] Civil Code of Montana 1895, § 1162.

[41] Laws of Montana 1939, c. 212, p. 564.

[42] Rev.Codes of Montana 1935, § 6705.

[43] See footnote 21 for citation.

[44] See footnote 21 for citation. Simes, Statutory Restrictions on the Accumulation of Income (1940) 7 U. of Chi.L.Rev. 409, 415, 416.

[45] See footnote 21 for citation.

[46] 1 Bogert, Trusts and Trustees (1935) § 217, p. 669; 2 Simes, Law of Future

Interests (1936) § 590; 2 Tiffany, Real Property (3rd ed. 1939) § 412; 48 C. J. Perpetuities, § 84.

[47] 1 Bogert, Trusts and Trustees (1935) § 215, p. 648, § 217, p. 668; 2 Simes, Law of Future Interests (1936) §§ 587–589; Kimball v. Crocker, 53 Me. 263. Contra, Hussey v. Sargent, 116 Ky. 53, 75 S.W. 211, 215, 216 (applying New Hampshire cypres doctrine).

[48] 48 C. J. Perpetuities, § 84; Lewis, The Law of Perpetuity (1846) c. XXVIII. This is further evidence of the general understanding that accumulations are permitted for lives in being plus 21 years in the absence of statute. See footnotes 20 and 22.

lines. Such a prognostication is not without precedent. Realization has yet to approach these anticipations.[49] It is, moreover, highly dubious whether size should be relevant in the courts on the issue of good or bad accumulations. In keeping with the general attitude of the law which for the most part avoids such distinctions, none of the states have made size relevant in their legislative action. As to the repercussions of a large accumulation it might be that we are not sufficiently well versed in economic cause and effect to know how much of what will lead us to spend all of our days in prosperity. As an example of the rapidity of change of emphasis in this field, consider the effort that has been made to keep purchasing power down to prevent inflation since these briefs have been written. This trust, moreover, directs that the income is to be reinvested. This trust estate is no Fort Knox.[50] We are not prepared to say how much better or worse is the use of this money by a trustee to buy a security than by an heir or beneficiary to purchase a topcoat.

It is argued that this accumulation is against principles of ethics. Posthumous avarice leading to disherison is bad. Living greediness is bad too. We are told that this will is a carry over from feudal days and is diametrically opposed to the principles of democracy. We presume that is because this trust is a large estate, a modern security-landed gentry. Yet the whole system of inheriting is a carry over from the past. That does not necessarily make it good or bad. It is contended that balance between security and frontier resourcefulness is needed. Today we do not feel the omniscience to promulgate the balance that will make us a race of supermen.

This discussion has not been an attempt to state exhaustively the questions that must be answered to establish a period for accumulations that would be good policy, much less to answer them. Nor are any of the observations that we have made to be applied to the parties of this litigation. We have given this synopsis to show, in spite of the well written Brandeis-like briefs before us, that this is not the proper forum to consider and establish the limitations on accumulations if they are to be other than those of the common law.

█ Under the accepted, established common law to date, this accumulation is good. Even though the common law is organic, the rule for this case should not be changed. Only 13 states have seen fit to change that rule by statute. The changes have not been uniform. There is a serious question as to whether the changes represent any improvement.[51] Changing the rule

---

[49] All figures and statements are estimates or approximations. In this case there is $1,600,000 in trust, earning $80,000 per year; $50,000 is now being accumulated; the expectancy of the younger life in being plus 21 years equals 55 years. The principal of the trust is figured to reach around $10,800,000.

The rate of return, the investment gains or losses, the costs of administration and litigation, the length of the lives, are important but imponderable factors. With this in mind consider the Thellusson history. The value of the trust estates was something over £600,000. The predicted life of the trusts was 75 to 80 years. The predicted ultimate value ranged from £23,000,000 to £34,500,000. The trusts continued for 60 years and grew but little. Powell, Cases on Future Interests, (2nd ed. 1937) p. 729, fn. 30; Barry, Mr. Thellusson's Will (1936) 22 Va.L.Rev. 416.

The estate in Moeller v. Kautz (112 Conn. 481, 152 A. 886) was something over $1,000,000. During the first year the amount of accumulated income was $42,000, for the second, $37,000, for the third, $23,000, and for the fourth, $123,-000. Then the income shrunk; one year there was none to accumulate for it did not pay the expenses of administration and the annuities. At the time of the decision the trust had been in existence some 14 years. The accrued income was only a little over $350,000. Thus the last ten years had netted $125,000, a little more than was realized in the fourth year alone. The length of this trust is measured by nine lives.

[50] Counsel quotes in italics these words from Bogert's Treatise: "It is possible that accumulation provisions are subject to further restrictions based on public policy. If they are useless, wasteful, and arbitrary the courts may refuse to enforce them, even though the period and beneficiaries are satisfactory." Bogert's next sentence is: "Thus, a trust to keep the money received as income in a box in specie for a certain period, without investment, might well be stricken down as unreasonable and contrary to good economic policy." 1 Bogert, Trusts and Trustees (1935) § 215, p. 650.

[51] Simes, Statutory Restrictions on the Accumulation of Income (1940) 7 U. of Chi.L.Rev. 409.

by holding the accumulation in this case bad would not make for any orderly improvement in our law. Any change made in the rule for accumulations should be correlated to other problems and periods in future interests.[52] A court does not have as good facilities to study these problems, nor does it represent as directly the people, as the legislative body. We therefore hold the accumulation provision of this testamentary disposition valid.

The decree of the District Court is reversed and the cause remanded for whatever further proceedings are necessary not inconsistent with this opinion.

Reversed.