LINKINS et al. v. PROTESTANT EPISCO-
PAL CATHEDRAL FOUNDATION OF
THE DISTRICT OF COLUMBIA et al.

WILLIAMS et al. v. PROTESTANT EPIS-
COPAL CATHEDRAL FOUNDATION OF
THE DISTRICT OF COLUMBIA et al.

STONE et al. v. PROTESTANT EPISCO-
PAL CATHEDRAL FOUNDATION OF
THE DISTRICT OF COLUMBIA et al.

Nos. 10273–10275.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 28, 1950.

Decided Oct. 30, 1950.

Mr. J. Richard Earle, Washington, D. C., for appellants Mamie Williams, Mabel Weisbacker, Perry F. Linkins and Perry F. Linkins, Committee of Joseph Linkins, an incompetent, with whom Mr. Frank L. Dennis, Washington, D. C., was on the brief for appellants William P. Linkins, Frank Norris and Albert V. Norris, and Mr. Joseph P. Bailey, Washington, D. C., was on the brief for appellants Gertrude E. Stone, Charles Stone, Raymond Linkins, Clayton Linkins and Emily Randolph.

Mr. Llewellyn C. Thomas, Washington, D. C., with whom Messrs. G. Bowdoin Craighill and Richard H. Mayfield, Washington, D. C., were on the brief, for appellees Protestant Episcopal Cathedral Foundation, and Vestry of the Nativity and Resurrection Parish.

Messrs. Ralph P. Barnard and Joseph H. Batt, Washington, D. C., entered appearances for appellee William Todd, Executor, Estate of Lillian L. Nutting, deceased.

Before STEPHENS, Chief Judge, and EDGERTON and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are three appeals from a judgment of the United States District Court for the District of Columbia admitting to probate a will of Lillian L. Nutting. The cases were consolidated for argument in this court.

The testatrix died on July 26, 1947. She had executed three wills, the first on April 22, 1943, the second on March 11, 1947, and the third and last on July 14, 1947. The latter date was within thirty days of her death. The last will (of July 14th) contained an express revocation clause. This clause was part of the opening sentence of the will and read in context as follows: "I, Lillian L. Nutting, * * * do hereby make, declare, and publish this my Last Will and Testament, hereby revoking any and all wills and codicils heretofore by me made."

All three wills provided for the disposition of the residual estate as follows: two-sixths to the Masonic and Eastern Star Home; two-sixths to the Washington Cathedral; one-sixth to the Church of the Nativity; and one-sixth to the Home for the Incurables. The Washington Cathedral and the Church of the Nativity are religious institutions. The District of Columbia Code provides in effect that testamentary gifts to or for the benefit of any religious sect, order or denomination are invalid if made within one month of death.[1]

The District Court admitted the will of July 14th to probate and later also admitted the will of March 11th. In the latter order the court declared the will of March 11th to be effective in so far as it applied to the residual disposition to the Washington Cathedral and the Church of the Nativity. The present appeals are from that order.

Appellants are next of kin and heirs at law of the testatrix. They contend that the gifts to the Washington Cathedral and the Church of the Nativity in the will of July 14th are invalid under the statute; that all other wills were expressly revoked

1. 31 Stat. 1434 (1901), D.C.Code, § 19—202 (1940): "No devise or bequest of lands, or goods, or chattels to any minister, public teacher, or preacher of the gospel, as such, or to any religious sect, order, or denomination, or to or for the support, use, or benefit of or in trust for any minister, public teacher, or preacher of the gospel, as such, or any religious sect, order, or denomination, shall be valid unless the same shall be made at least one calendar month before the death of the testator."

in that last will; and that, therefore, one-half (two-sixths and one-sixth) of the residual estate passed intestate. Appellees, applying the doctrine of dependent relative revocation, contend that the revocation clause of the will of July 14th did not instantly and unconditionally revoke the residual clause of the will of March 11th but left that residual clause intact until the new residual clause, identical with the prior one, could come into technical effect; and that, therefore, the District Court was correct in admitting the March 11th will to probate. Thus the controversy revolves about the revocation clause in the last will.

The problems grouped by scholars and authorities under the title "doctrine of dependant relative revocation" are varied. We shall not, however, venture upon a treatise upon the subject but, instead, confine ourselves to the case before us.

There is nothing new or novel about the problem thus posed. At least as early as 1716 the English courts were dealing with it. In that year Onions v. Tyrer was decided, and the report of the opinion of Lord Chancellor Cowper (as it appears in the Peere Williams reports)[2] shows in some detail the reasoning of his Lordship. His view was that the cancellation of the first will, although ordered by the testator, "depended on the validity of the second will, and ought to be taken as one act done at the same time, so that if the second will is not valid, as the testator thought it was, and without which he would not have cancelled the first, the cancelling the first will, depending thereon, ought to be looked upon as null also, and

therefore the first will as to the said lands, is still subsisting and unrevoked." His Lordship rested his conclusions upon the fact that the disposition of the land in question in the second will was the same as it was in the first will, which, he pointed out, "shews he did not mean to revoke his first will as to the devise of these lands, unless he might by the second will (at the same time that he revoked the former) set up the like devise".

The doctrine and its application to many problems have been ably examined and stated.[3] The courts have not departed very far from that original holding in cases of this particular type. Certainly in recent times the trend has been to limit the effect of revocations in accordance with the intent of the testators. The Supreme Court of California has recently examined the problem in a scholarly opinion[4] with which we agree.

We hold that evidence extrinsic to the latest will may be adduced to show that the execution of the revocatory clause was intended to be upon a condition. Thus we find the solution in a well-established pattern of law. That pattern applies generally to contracts and even to deeds; e.g., delivery of an executed contract may be shown to have been in escrow, or a deed may be shown to have been in fact a mortgage.

Extrinsic evidence being admitted in the case at bar, there is no further doubt upon the substantive point at issue. The evidence is that the two prior wills contained residuary devises identical with that in the latest will, that testatrix omitted bequests and devises to her heirs and next

2. 1 P. Wms. 344, 24 Eng.Rep.R. 418.

3. In re Macomber's Will, 1949, 274 App. Div. 724, 87 N.Y.S.2d 308; In re Bernard's Settlement, 1916, 1 Ch.Div. 552; Blackford v. Anderson, 1939, 226 Iowa 1138, 286 N.W. 735; Colvin v. Warford, 1863, 20 Md. 357; Sanderson v. Norcross, 1922, 242 Mass. 43, 136 N.E. 170; In re Smith's Will, 1930, 254 N.Y. 283, 172 N. E. 499; Security Co. v. Snow, 1898, 70 Conn. 288, 39 A. 153; In re Braun's Estate, 1948, 358 Pa. 271, 56 A.2d 201; Carpenter v. Wynn, 1934, 252 Ky. 543, 67 S.W.2d 688; In the Goods of Hope Brown, deceased, [1942] Prob.Rep. 136, 167 L.T. 95 (Prob.Div., High Ct. of Justice); Charleston Library Soc. v. Citizens & Southern Nat. B., 1942, 200 S.C. 96, 20 S.E.2d 623; Warren, Dependent Relative Revocation, 33 Harv.L.Rev. 337 (1920); Cornish, Dependent Relative Revocation, 5 So.Calif.L.Rev. 273, 393 (1932); 1 Page, Wills §§ 478-486 (3d (Lifetime) ed.); Jarman, Wills 154 (star pp. 119-120) (6th Am. ed. 1893); 57 Am.Jur. § 517.

4. In re Kaufman's Estate, 1945, 25 Cal.2d 854, 155 P.2d 831.

of kin because she thought them already well off, and that the latest will was drawn and executed in order to correct formal defects in the will then extant. Obviously the proof establishes that testatrix executed the revocatory clause in her new will with full intent that it be not effective until the new devise became effective.

Appellants suggest that the doctrine of dependent relative revocation applies only to cases where the testator by a physical act cancels or destroys a will, intending that another will be drawn. They call attention to authorities intimating, if not holding, that where a will validly executed contains an express revocation clause, but the will is invalid for extrinsic reasons, the doctrine of dependent relative revocation does not apply. But we are unable to perceive a sound basis for the distinction urged upon us.[5] A person's intent to revoke a will could hardly be made clearer or more certain than by intentionally tearing it up or burning it. If a will thus destroyed survives revocation because the testator intended to but never did execute another will, we cannot see why a will purportedly destroyed by words should not survive that destruction if the testator meant it to survive until the newly executed will became effective.

The doctrine of dependent relative revocation is basically an application of the rule that a testator's intention governs; it is not a doctrine defeating that intent. It should be applied in this case. The judgment of the District Court will, therefore, be affirmed.

One point made by appellants in support of their position must be noted separately. The Act of March 3, 1901, provides in part: "The common law, all British statutes in force in Maryland on February 27, 1801, the principles of equity and admiralty, all general Acts of Congress not locally inapplicable in the District of Columbia, and all Acts of Congress by their terms applicable to the District of Columbia and to other places under the jurisdiction of the United States, in force in the District of Columbia on March 3, 1901, shall remain in force except in so far as the same are inconsistent with, or are replaced by, subsequent legislation of Congress." [6]

Appellants say this provision means that, absent a statute on a particular legal question, the common law as it existed in 1801—not as it has grown and developed to the present time—governs. The simple answer is that the statute does not so provide. Commas enclose the phrase "all British statutes in force in Maryland on February 27, 1801," and make it clear that the time limit of 1801 was meant to apply only to "all British statutes". We do not think Congress intended to freeze the common law at March 3, 1901, or at any other date.

The common law, particularly as derived from the common law of Maryland,[7] is the fundamental part of the law in this jurisdiction to which we look in the absence of statutory enactment.[8] The gist of the argument by appellants is that the common law of 1801 (or of 1901) became by act of Congress statutory law in this jurisdiction. As such it could not change except by legislative enactment. But the very term "common law" means a system of law not formalized by legislative action, not solidified but capable of growth and development at the hands of

5. Ward v. Van der Loeff, [1924] A.C. 653 (H. L.); Blackford v. Anderson, 1939, 226 Iowa 1138, 286 N.W. 735.

6. 31 Stat. 1189, D.C.Code, § 49—301 (1940).

7. Brown v. United States, 1938, 69 App.D.C. 96, 99 F.2d 131, certiorari denied, 1938, 305 U.S. 562, 59 S.Ct. 97, 83 L. Ed. 354; United States v. Groen, D.C. 1947, 72 F.Supp. 713.

8. Gertman v. Burdick, 1941, 75 U.S.App. D.C. 48, 123 F.2d 924, certiorari denied, Burdick v. Burdick, 1942, 315 U.S. 824, 62 S.Ct. 917, 86 L.Ed. 1220; Pascucci v. Alsop, 1945, 79 U.S.App.D.C. 354, 147 F. 2d 880, certiorari denied, 1945, 325 U.S. 868, 65 S.Ct. 1406, 89 L.Ed. 1987; Mead v. Phillips, 1943, 77 U.S.App.D.C. 365, 135 F.2d 819; George Washington University v. Riggs Nat. Bank, 1936, 66 App. D.C. 389, 88 F.2d 771; Lisner v. Hughes, 1919, 49 App.D.C. 40, 258 F. 512.

judges. The distinguishing characteristics of the common law would be destroyed by appellants' view. We are of clear opinion that Congress did not so intend. When the statute provided that the common law should remain in force, it meant that the system of the common law, unwritten and dynamic, not its then-current pronouncements on specific problems, should remain in force. This view is implicit throughout the cases we have just cited. In none of them was there an intimation that the court felt bound by the common law as it had been applied to some particular circumstance at some prior date. In Gertman v. Burdick [9] this court, although holding that the old common-law rule on the problem before it should remain in force, did not purport to announce a freezing of the common law at any date. It wrote that the common law is "imbued with reason, sound policy, and a capacity for growth." [10] Its conclusion was that "Under the accepted, established common law to date,"[11] the old rule was valid. In DeForest v. United States [12] the court expressly held that the former common law should not be followed where changes in conditions have made it obsolete. We have never hesitated to exercise the usual judicial function of revising and enlarging the common law.[13]

We conclude that the 1901 act established the common law as the law in this jurisdiction but did not purport to freeze that law into its 1901 (or 1801) mold so that it could not expand to meet the changes of a dynamic society.[14] One sentence in the opinion of this court in Baltimore & O. R. Co. v. Thomas [15] seems to be at variance with the view we have expressed. To that extent we overrule it.

Affirmed.

EDGERTON, Circuit Judge.

I concur in Judge Prettyman's opinion, though I think it would be possible to base affirmance on another theory. D. C. Code (1940) § 19—202, which we quote in footnote 1, provides that no bequest to a religious sect shall be valid "unless the same shall be made at least one calendar month before the death of the testator." In my opinion it would not be unreasonable to hold that this restricts only the making of wholly or partly new bequests, not the mere restatement of existing ones, and that the residuary clause in the will of July 14 is therefore valid.

9. 1941, 75 U.S.App.D.C. 48, 123 F.2d 924, certiorari denied, 1942, 315 U.S. 824, 62 S.Ct. 917, 86 L.Ed. 1220.

10. 75 U.S.App.D.C. at page 55, 123 F.2d at page 931.

11. 75 U.S.App.D.C. at page 57, 123 F.2d at page 933.

12. 1897, 11 App.D.C. 458.

13. Kay v. Cain, 1946, 81 U.S.App.D.C. 24, 154 F.2d 305.

14. See the excellent discussion in Bonbrest v. Kotz, D.C.1946, 65 F.Supp. 138. See also Rowe v. Colpoys, 1943, 78 U.S. App.D.C. 75, 137 F.2d 249, certiorari denied, 1943, 320 U.S. 783, 64 S.Ct. 190, 88 L.Ed. 470.

15. 1911, 37 App.D.C. 255, 257.