# In the Matter of the Estate of MANUEL ACKLER, Deceased.

Surrogate's Court, Oneida County, July 30, 1938.

*Baker & Hazard* [*Frederick H. Hazard* of counsel], for the petitioner.

*Schmidt & Petersen* [*Albert W. Schneider* of counsel], for Joseph Ackler.

*James P. O'Donnell,* for Glenn Edick, administrator, etc., of Genie Ackler, deceased.

RINGROSE, S. Among the issues raised upon this accounting proceeding is an application by the representative of the widow's estate for an order permitting him to exercise on behalf of her estate the limited right of election to take the sum of $2,500, pursuant to the provisions of section 18 of the Decedent Estate Law, and the further application for an order directing the executor to set apart to the widow's estate, as exempt property, the sum of $300, pursuant to subdivision 4 of section 200 of the Surrogate's Court Act.

The testator died on January 9, 1936, survived by his widow, Genie Ackler, and collateral relatives. His will and codicil, both dated on December 3, 1935, were admitted to probate by a decree of this court on February 18, 1936. Letters testamentary were on the same date issued to Harry D. Parkhurst, the named executor.

Following the customary direction for the payment of debts, the testator bequeathed and devised his entire estate to his executor in trust and directed him to invest and reinvest the same and to collect and pay over the income therefrom to his wife for life. Authority was also conferred upon the trustee to use and expend the corpus of the estate for the widow's maintenance and comfort.

Upon the widow's death, the balance of the estate was bequeathed to certain named legatees in varying amounts. The final account filed in this proceeding shows the balance to be $18,158.02.

The widow was adjudged an incompetent and a committee of her property appointed by an order of the Oneida County Court, entered on March 19, 1936. She died on May 17, 1936. Her will, dated on August 27, 1927, was admitted to probate by this

court on May 22, 1936. By the terms thereof she left her entire estate to her husband and named him as executor. Owing to his previous death, Glenn H. Edick, her sole surviving distributee, was appointed administrator with the will annexed of her estate. She left a gross estate appraised for estate tax purposes at $26,019.63.

That part of section 200 of the Surrogate's Court Act pertinent to the question here presented provides as follows:

" Exemption for benefit of family. If a person having a family die, leaving a widow or husband, or minor child or children the following articles shall not be deemed assets but must be included and stated in the inventory of the estate as property set off to such widow, husband or minor child or children."

And subdivision 4 thereof provides as follows:

" Money or other personal property not exceeding in value three hundred dollars, except, however, that the administrator or other representative of the estate may, where there are insufficient assets in the estate to pay the reasonable funeral expenses of the decedent, apply any such money or other personal property in the estate to pay any deficiency in the payment thereof.

" Such property so set apart shall be the property of the surviving husband or wife, or of the minor child or children if there be no surviving husband or wife."

That the family relationship existed at the time of the decedent's death is undisputed. That being true, that portion of the testator's property embraced within the category of exempt property defined by the statute immediately upon the death of the husband became the property of the widow. (*Crawford* v. *Nassoy*, 173 N. Y. 163, 166; *Matter of Hallenbeck*, 195 id. 143, 145; *Matter of Levine*, 157 Misc. 454, 455; *Matter of Goldman*, 158 id. 497, 498.)

The estate of the widow is entitled to the exemption provided by section 200, subdivision 4, of the Surrogate's Court Act in the sum of $300.

The application of the representative of the widow's estate for permission to exercise the limited right to take the sum of $2,500, pursuant to the provisions of paragraph (b) of subdivision 1 of section 18 of the Decedent Estate Law is denied.

The right of election conferred upon a surviving spouse by this statutory enactment is personal to such survivor. (Dec. Est. Law, § 18, subd. 1; *Matter of Mihlman*, 140 Misc. 535; *Matter of Zweig*, 145 id. 839, 859; *Matter of Coffin*, 152 id. 619, 621; *Matter of Armstrong*, 160 id. 806, 808; *Matter of Froman*, 165 id. 400.)

The purpose of this limited right of election is to avoid financial embarrassment to the surviving spouse during that critical period of readjustment following death and not to fatten the bounty of

testamentary beneficiaries or to enhance the value of the shares of the recipients of the intestate property when the spouse who survives has failed to exercise the right of election prior to death.

There is no discernible reason for a distinction being made between the consequences resulting from the failure to exercise a right of election where death intervenes prior to the expiration of the statutory limitation within which to file the required notice and where the failure to file notice prior to death may be due to inaction or omission on the part of a committee of an incompetent surviving spouse. In either event, the purpose of this statutory privilege is concluded. It has been so held with reference to the widow's right to elect to take dower in lieu of the provisions of her husband's will for her benefit. (*Flinn* v. *McDermott*, 183 N. Y. 62; *Camardella* v. *Schwartz*, 126 App. Div. 334; *Youngs* v. *Goodman*, 240 N. Y. 470, 473; *Lowe* v. *Plainfield Trust Co.*, 216 App. Div. 72, 77.)

Section 18, subdivision 6, of the Decedent Estate Law provides as follows: " The election as herein provided may be made by the general guardian of an infant, when authorized so to do by the surrogate having jurisdiction of the decedent's estate, or may be made in behalf of an incompetent when authorized by the Supreme Court."

There was never any application made to the Supreme Court by the committee for permission to file the notice of election. It is problematical what disposition would have been made by the Supreme Court of a timely application by the committee for permission or direction to file the required notice. It is certain such permission would have been granted only after a thorough and careful investigation of the facts and circumstances and equities of the particular case. It is possible that an application in this instance would have been denied upon the existing facts and in view of the liberal testamentary provisions for the widow. However, the power and authority to grant this statutory permission is exclusively with n the jurisdiction of the Supreme Court, and cannot now be exercised by this court on behalf of the representative of the widow's estate. (Dec. Est. Law, § 18, subd. 6; *Matter of Brown*, 212 App. Div. 677, 680; affd., 240 N. Y. 646.)

The representative of the widow's estate also objects to the retention by the executor as part of the assets of this estate of one-half of the proceeds from the sale of a $1,000 five per cent Equitable Gas and Electric Company bond and from twenty shares of the preferred stock of the Oneita Knitting Mills, standing in the names of the testator and his wife. It is urged that the widow's estate is entitled to the entire proceeds by reason of survivorship.

Section 66 of the Real Property Law provides, in part: " Every estate granted or devised to two or more persons in their own right shall be a tenancy in common unless expressly declared to be a joint tenancy."

This applies with equal force to personal property. (*Matter of Kimberley*, 150 N. Y. 90; *Matter of Kaupper*, 141 App. Div. 54; affd., 201 N. Y. 534.)

No presumption exists from the fact that a chose in action held in the names of husband and wife creates a joint tenancy with right of survivorship. (*Matter of Blumenthal*, 236 N. Y. 448; *Matter of Kane*, 246 id. 498, 504.)

The rule referable to the application of this presumption was announced by the court in *Matter of Kaupper (supra)*, as follows: " In the absence of direct evidence as to the intent, the law deals with presumptions. It has been held that if the husband and wife each contribute to a joint investment, or to the purchase of a security, and the title is taken in their joint names to be held by them, their executors, administrators or assigns, no presumption arises from the nature of the act that either intended to make a gift of his or her share to the survivor, and they would hold the same as tenants in common. (*Matter of Albrecht*, 136 N. Y. 91.) On the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint name of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence the presumption will be that he intended to confer upon his wife the right of survivorship."

In the instant case, at the time of the purchase of these securities there was the existing relationship between the parties of husband and wife. To establish ownership of the securities by the widow by virtue of survivorship, in the absence of direct proof of intent, it must be proved that the funds with which payment for the securities was made belonged to the husband.

There is no proof either as to the intent of the testator or as to the ownership of the funds with which the Equitable Gas and Electric bond was purchased, and the objection to the al ocation of the proceeds received from the sale of this security between this estate and the estate of the widow is dismissed.

The contrary is true with regard to the twenty shares of the Oneita Knitting Company stock. A factual inference of the ownership of the funds with which this security was purchased was established by the testimony of the broker through whom the transaction was consummated to the effect that the testator paid for the same by his personal check. This inference of ownership

was in no way rebutted, and is, therefore, conclusive. This object-
ant's case, with regard to this security, does not rest exclusively
upon this fact. It is further strengthened by the fact that the
testator stated to the broker that he desired the security taken in
the name of himself and his wife, so that if anything happened to
him it would go to her.

The rule applicable to the facts here presented is admirably
stated and the authorities correlated in *Belfanc* v. *Belfanc* (252
App. Div. 453).

This objection to the retention by the executor of this estate of
one-half of the net proceeds received from the sale of the twenty
shares of the Oneita Knitting Company stock is sustained, and the
proceeds upon the sale thereof become the property of the Genie
Ackler estate.

In the course of the trial it appeared that Glenn H. Edick, as
administrator with the will annexed of the widow's estate, errone-
ously included in his objections seventeen shares of the six per cent
preferred stock of the Utica Gas and Electric Company and twelve
shares of the seven per cent preferred stock of the same company.
These securities were in the name of the testator alone, and the
objection thereto was abandoned. Likewise, the certificate for
the Oneita Knitting Mills stock was described as being for ten
shares, whereas the facts disclose it was issued for twenty shares.

The remaining issues for determination are raised by objections
to the account of the executor, filed by Joseph Ackler, one of the
residuary legatees under the will of this decedent, wherein he seeks
to surcharge the account of the executor with the sum of $546.75,
paid by him for the widow's funeral expenses and incidentals thereto,
including the lettering of the monument for both decedent and his
wife, in the sum of $23.75, and also with the further sum of $230.07,
consisting of miscellaneous items, part of which were in payment of
expenses incurred by the testator prior to his decease, and the
balance incurred by the executor in the maintenance of the resi-
dence of the incompetent during her confinement in a nursing home
for treatment of a mental derangement.

It appeared that the nature of the mental ailment of the widow
made it uncertain as to whether or not the facilities of the nursing
home were such as to permit her to remain there indefinitely, and
that the testator had exacted a promise from the executor that
he would not place her in a State institution. The only alternative
was to maintain the residence of the widow in a condition available
for her immediate return, where provision for individual care could
be made. Ample authority is conferred upon the executor by the
second paragraph of the testator's will to use both the income and

the corpus of the estate for the comfortable support and maintenance of his widow. Under the circumstances here shown to exist the maintenance of her home in a condition suitable for her immediate return was within the authority of the executor and a reasonable exercise of his discretion. (*Matter of Blanchard*, 232 App. Div. 361.)

The request to surcharge the account of the executor with said sum of $230.07 is denied and the objection to the items therein contained is dismissed.

The payment of the wife's funeral expenses from the testator's estate is disallowed and the account surcharged with the amount thereof, with the exception of the sum of twenty-three dollars and seventy-five cents, which shall be apportioned to the testator's estate and to the widow's estate in the amount of the actual cost to each estate of the lettering of the monument.

The courts of this State have repeatedly announced the rule that where there is property in a wife's estate ample for the payment of her funeral expenses, the same are chargeable against her estate. (*Matter of VanZant*, 231 App. Div. 381; *Matter of Stadtmuller*, 110 id. 76; *Mat'er of Burt*, 160 Misc. 218.)

On the trial of this proceeding this objectant was permitted, on motion to amend his objections by including therein an objection to the retention by the representative of the widow's estate of a mortgage to secure the payment in the sum of $3,000, made and executed on January 15, 1937, by Samuel L. Baker and wife, to the testator and his wife, designated therein as " Manuel Ackler and Genie Ackler, husband and wife, and as tenants of the entirety." It is urged on behalf of this objectant that tenancy by the entirety does not exist as to personal property, and that one-half of this mortgage or the avails thereof belong to this estate.

While this contention is true, it is also a fact that an analogous tenancy does exist in personal property by whatever name designated where securities are taken in the name of husband and wife, and the intention is clearly, although inaptly, expressed that the right of survivorship should prevail upon the death of either.

It is the paramount duty of the court to accord substance to the words employed to express the intent of the parties. This rule as to documentary interpretation is announced in *Manson* v. *Curtis* (223 N. Y. 313, 320), as follows: " The ascertainment of the substantial intent of the parties, as expressed, is the fundamental rule in the interpretation of all contracts. We must look to the agreement as a whole, to the matters with which it deals, to the circumstances under which it was made, and thereby determine the true intent and purpose of the parties, and if such intent and purpose is

reasonably within the scope of the language used it must be taken to be a part of the agreement the same as if it were plainly expressed. (*People ex rel. New York Central & Hudson River R. R. Co.* v. *Walsh*, 211 N. Y. 90.) "

In the *Blumenthal* case, cited by counsel for this objectant, the intention of the parties was considered the controlling element in a determination of the nature of the tenancy, and the court stated (at p. 454): " The ownership which they had in the bond and mortgage was not dependent upon the piece of property that was given as security but upon the wording of the instrument."

It is, therefore, determined upon the facts shown to exist in this case that the mortgage in question passed upon the death of this testator to his widow, Genie Ackler, and is an asset of her estate.

The court is not unmindful of the contrary result reached in the *Blumenthal* case, but it is clearly demonstrated by the court in its decision that the grant was to " Alfred Blumenthal and Hannah Blumenthal, his wife," without any appellation as to the nature of the tenancy intended or additional words from which such intent could be inferred.   It is this distinction which impels the conclusion reached in the consideration of the issues here raised.

Enter decree on five days' notice.   Decreed accordingly.