OPINION OF THE COURT
Bertram R. Gelfand, J.
This is a proceeding to determine the validity and/or effect of a right of election. Petitioner is the administrator of decedent’s postdeceased surviving spouse. At issue is the *177 appropriateness of the procedures which led to the filing of the notice of election. Specifically, the novel issue presented concerns the validity of the notice of election filed on behalf of the spouse by a person who had petitioned in this court to be appointed her conservator and had received authorization from the court as preliminary relief in the conservatorship proceeding to file the notice, but had never been appointed her conservator in this jurisdiction inasmuch as the proceeding was terminated by dint of her death. The determination of this issue hinges upon an interpretation of EPTL 5-1.1 (subd [d], par [4]) and the applicable provisions of article 77 of the Mental Hygiene Law.
The spouse’s son is the person who instituted the conservatorship proceeding. The application sought to confer upon the conservator only the limited authority to file a notice of election. Petitioner was proceeding based upon his status as the duly appointed guardian of her estate in the State of Pennsylvania.
Decedent died on December 2,1981 survived by a spouse. His will, dated August 10,1977, was offered for probate by the nominated executor on April 29,1982. Under the terms of said will, decedent’s spouse is bequeathed 50% of the estate. Subsequent to decedent’s death, the spouse was placed in a nursing home located in Pennsylvania and, on February 12,1982, was adjudicated an incompetent in that jurisdiction. Her son from a prior marriage was appointed guardian of her property. It appears from petitioner’s contentions that he has concluded that the spouse would receive a greater benefit by exercising her right of election than under the will, as a result of inter vivos dispositions which, it is claimed, are testamentary substitutes pursuant to EPTL 5-1.1 (subd [b]).
When petitioner instituted the proceeding to be appointed conservator, he sought the interim relief of being permitted to immediately file a notice of election on behalf of his proposed ward since it was problematical whether she would survive the completion of the proceeding to appoint a conservator. The interim relief was granted since if the spouse died before her right of election was filed, *178 irreparable prejudice would result (see EPTL 5-1.1, subd [d], par [4]).
Upon the initial application, opposition was interposed by the nominated executor on the basis that the petitioner had an irreconcilable conflict of interest with the proposed conservatee. No party disputed, however, that decedent’s spouse could not adequately care for herself and required a fiduciary to act on her behalf.
Based upon the interim authority granted in the order to show cause, entered on May 12, 1982, which initiated the proceeding, a notice of election was filed on May 19, 1982. When the matter appeared on the adjourned date of June 30,1982, the court was advised that the proposed conservatee had indeed died subsequent to the filing of the notice of election. As a result, the parties were in agreement that further relief with reference to the application to appoint petitioner as a conservator on her behalf in this jurisdiction was rendered moot. That application was withdrawn without prejudice to the rights, if any, of any party in interest with reference to the effect and/or validity of the notice of election heretofore filed (see Matter of Fabell, NYLJ, July 8, 1982, p 11, col 2).
On the return date of the instant application, the parties entered into a stipulation wherein it was agreed that a preliminary question of law was presented with reference to the appropriateness of the procedures that led to the filing of the notice of election. No party wished to adduce any factual testimony on this subject.
The respondent executor contends that the petitioner lacked standing and was not possessed with the requisite authority to have filed a notice of election on behalf of his mother. Although EPTL 5-1.1 (subd [d], par [4]) provides that the right of election is personal to a surviving spouse, it also specifically authorizes an election to be made by the guardian of the property of an infant spouse (when so authorized by the Surrogate’s Court having jurisdiction of the decedent’s estate), by the committee of an incompetent spouse, and by a conservator on behalf of a conservatee spouse (when so authorized by the Supreme Court). Respondent appears to argue that the notice of election was improperly filed and should be given no effect on the basis *179 that petitioner never applied to become the committee for his mother; failed to obtain authorization from the Supreme Court to file the election on behalf of his mother; and that the application was not properly instituted in Bronx County since the subject of the proceeding no longer resided in that jurisdiction.
At the outset, it must be noted that as a conservator, petitioner has the status to file a right of election on behalf of a conservatee by dint of legislation effective May 18, 1981 which specifically added a new clause (C) to EPTL 5-1.1 (subd [d], par [4]) authorizing a conservator, in addition to a committee, to assert a right of election on behalf of his ward (L 1981, ch 115, § 42). This is consistent with the clearly expressed legislative intent that a conservator have all of the powers and duties granted to, or conferred upon, a committee as set forth in section 77.19 of the Mental Hygiene Law. Accordingly, there is no merit to respondent’s argument that petitioner was statutorily limited to seeking to be appointed the committee of his mother in order to gain a status that would permit him to file a notice of election on her behalf.
The contention of respondent that petitioner required authorization from the Supreme Court to file a notice of election on behalf of his conservatee is likewise without merit. The Surrogate’s Court now enjoys limited jurisdiction in conservatorships where, as in this case, a person has a beneficial interest in an estate (Mental Hygiene Law, § 77.01, subd 3). This is a product of relatively recent legislation (L 1981, ch 362, § 4, eff Sept. 1,1981). Unquestionably, EPTL 5-1.1 (subd [d], par [4], cl [C]) merely makes reference to the Supreme Court as the court that can authorize a filing of a notice of election on behalf of a conservatee because at the time this subdivision was enacted or last amended, the Supreme Court had exclusive jurisdiction over all conservatorships. As a result, it necessarily was the only court possessed of the ultimate authority to determine whether a fiduciary designated by it was acting in the best interest of the conservatee or incompetent in seeking to file a right of election (see 3B Warren’s Heaton, Surrogates’ Courts, § 304, par 8 [g]). An intrinsic corollary to the Legislature’s extending jurisdiction over *180 conservatorships to Surrogate’s Courts is that the Surrogate’s Court has the same jurisdiction over a conservator-ship instituted before it as the Supreme Court would possess in a similar matter over which it exercised jurisdiction. This authority would include determining whether authorization to file a right of election should be granted.
To the extent that an isolated reading of EPTL 5-1.1 (subd [d], par [4]) appears to limit the authorization to file a right of election to be obtained in the Supreme Court, this omission is cured by SCPA 209 (subd 10) which specifically grants to the Surrogate’s Court “all of the powers the supreme court would have in like actions and proceedings”. This statute clearly cures any omission in the often impossible task of amending each and every section of the law to conform with new statutes extending the jurisdiction of the Surrogate’s Court into areas previously reserved exclusively to the Supreme Court.
The authority of the Surrogate’s Court to authorize a conservator, or temporary conservator, appointed by it to file a right of election is not only supported by statute, but by logic. Embracing the arguments of respondent would require totally disregarding the purpose of the amendatory provisions of the Mental Hygiene Law and placing petitioner in the anomalous position of being able to avail himself of these provisions in seeking to be appointed conservator of his mother in the Surrogate’s Court, but requiring him to apply to the Supreme Court for authorization to file a right of election on her behalf in the Surrogate’s Court that initially appointed him conservator. It would be absurd to conclude that the Legislature intended that such a course be followed. Moreover, the recent pronouncement of the Court of Appeals in Matter of Piccione (57 NY2d 278), firmly establishes that the ability of the Surrogate’s Court to determine a matter over which it properly has jurisdiction is not limited by the existence of a statutory provision that explicitly provides that a certain type of relief may only be obtained in another specified court.
In light of the clear intent of the Legislature in enacting subdivision 3 of section 77.01 of the Mental Hygiene Law to avoid the necessity and concomitant delay and expense *181 in commencing proceedings in different courts (see Matter of Condon, 118 Misc 2d 544, and the provisions of SCPA 209, subd 10), EPTL 5-1.1 (subd [d], par [4], cl [C]) is construed as providing that the authorization required prior to filing a notice of election on behalf of a conservatee may be obtained from the Surrogate’s Court where that court has jurisdiction of the conservatorship proceeding. Of course, implicit in this court’s having granted interim authority to petitioner for the specific purpose of filing a notice of election is the authorization to file such notice of election on behalf of the proposed conservatee.
The final contention raised by respondent that the court lacks jurisdiction because the proposed conservatee does not reside in Bronx County also must fail. Respondent relies upon subdivision 3 of section 77.01 of the Mental Hygiene Law which provides as follows: “3. * * * in any proceeding in the surrogate’s court when it appears that a person interested in the estate is entitled to money or property as a beneficiary of an estate * * * and the person interested is a resident of the county in which the proceeding is pending and is one for whom a conservator may be otherwise appointed pursuant to subdivision one hereof, and the surrogate’s court is satisfied by clear and convincing proof of the need therefor, it shall have the power to appoint a conservator of the property for such person” (emphasis added).
However, this section alone is not dispositive of this court’s jurisdiction where the conservatee is a nonresident of New York State. Jurisdiction in such cases flows from a reading of section 77.05 which specifically provides that under article 77 of the Mental Hygiene Law, the residence of a nondomiciliary is any county within the State where his property is situated. In the instant matter, the only property of the spouse is her interest in this estate in Bronx County and, therefore, the spouse resides in Bronx County for conservatorship purposes and this court has jurisdiction under subdivision 3 of section 77.01. Nothing contained in subdivision 1 of section 77.01 granting jurisdiction to the Supreme Court or County Courts outside of the City of New York in conservatorships for nonresidents limits the impact of section 77.05. In any event, it must be concluded *182 that SCPA 209 (subd 10), read in conjunction with section 77.05 of the Mental Hygiene Law, would grant to the Surrogate’s Court having jurisdiction over the property of a nonresident conservatee all the powers possessed by the Supreme Court under subdivision 1 of section 77.01 of the Mental Hygiene Law.
The court has addressed the explicit contentions of respondent. There remains his overriding implicit contention that the interim authority to petitioner granted in the order to show cause dated May 12,1982 cannot properly be the basis for his asserting the right of election on behalf of his ward.
At present, there is statutory authority permitting the court to grant provisional relief in the event the facts should disclose the need to preserve the property of the proposed conservatee pending adjudication of the conservatorship (Mental Hygiene Law, § 77.08, subd [e]). However, this statutory provision did not become effective until October 1, 1982 (see L 1982, ch 489, § 1) and, as a result, at the time the interim relief here at issue was granted, there was no express statutory provision addressed thereto. It is not uncommon for rights that otherwise existed for long periods of time from the interpretation of statutes to ultimately be specifically codified in a later enacted statute. This is the case in the instant matter.
At the time the application was instituted, subdivision (f) of section 78.03 of the Mental Hygiene Law explicitly provided for provisional relief in a proceeding seeking the appointment of a committee. Likewise, the Mental Hygiene Law clearly confers upon a conservator all of the powers and duties granted to or imposed upon a committee (Mental Hygiene Law, § 77.19). It is noted that section 77.19 additionally provides that the court may grant the conservator “such additional powers as the court [may] order”. In the instant matter, the court specifically granted to petitioner the power to file the right of election.
It is concluded that the original failure to explicitly codify the authority to allow provisional relief in a conservatorship proceeding does not evidence the absence of such authority. Since the creation of conservatorships, our statutes have been permeated by an intent to harmonize the *183 two types of fiduciary. In any event, the lack of an explicit statutory provision governing the extraordinary circumstances presented to the court did not foreclose the court from proceeding under the broad general powers of equity which it inherently possesses under the provisions of SCPA 209, including the type of immediate relief that is afforded parties to prevent irreparable harm under the provisions of CPLR article 64 (see SCPA 102; Matter of Corrigan, 19 AD2d 522; Matter of Newkirk, 42 Misc 2d 1067; 18 Carmody-Wait 2d, NY Prac, § 109:18, n 13). In Matter of Newkirk (supra), the court was faced with a strikingly similar question to the one at bar. It explicitly indicated that the power to grant provisional relief was within the inherent power of the court notwithstanding the lack of express statutory authority. The issues in that case related to the period prior to enactment of the provisional relief provisions in incompetency proceedings. For all of the foregoing reasons, it is concluded that the interim relief fashioned to prevent irreparable harm embodied in the order to show cause entered May 12, 1982 was properly within the court’s discretionary power to grant.
In interpreting the provisions of EPTL 5-1.1, it has been recognized that the Legislature had an intent to favor a construction which would expand and protect the rights of a surviving spouse (see Matter of Agioritis, 40 NY2d 646, 650-651). The court is sensitive to the fact that in the instant matter, if petitioner is ultimately successful in asserting a right of election, the death of the surviving spouse has clearly precluded her from directly benefiting from the election. Nevertheless, this unfortunate set of circumstances cannot be the basis for a different result in this matter based upon the spouse now being deceased. Although an executor or administrator may not file or serve a right of election on behalf of a postdeceased surviving spouse because that right is personal to the spouse, once the election is properly served and filed the right may be pursued or enforced by the fiduciary of the surviving spouse’s estate (10B Cox-Arenson-Medina, NY Civ Prac, par 1421.02; 9A Rohan, NY Civ Prac, par 5-1.1 [13] [a] [i]). It has even been held that, under appropriate circumstances, a committee of an incompetent surviving spouse *184 may pursue the right of election after the death of the incompetent (Matter of Sturm, 54 AD2d 999). Similarly, if the court in the conservatorship proceeding had not granted the interim relief of authorizing the filing and service of the notice of election, it would encourage those who would be adversely affected by the right of election to delay the appointment of a conservator or committee in the hope that the death of the incompetent would occur prior to the conclusion of the proceeding for the appointment of a fiduciary.
It is not for the court to address the philosophical justification for a fiduciary of a spouse asserting a right of election on what may appear to be the eve of her life. While it may be argued that the right of election is essentially intended to protect the future rights of a surviving spouse, it is not for the court to examine whether it is a right that may be exercised based on the life expectancy of the spouse when she files her right of election. To explore such an issue would require venturing into extraneous questions, such as whether the fruits of the right of election would satisfy past needs received but not paid for, how long it would appear the spouse would survive, what her needs in the future may reasonably constitute, and how much money she requires for these needs. Our statutes grant the right of election to every surviving spouse, who is entitled to inherit, to be exercised without regard to the surviving spouse’s own life expectancy. Should the spouse die after having filed the notice of election, it survives the spouse’s death. A spouse may exercise the right with his or her last breath. It is incumbent upon the courts to permit the fiduciary of a spouse under a disability to proceed as the spouse would, so long as such proceeding is not adverse to the best interests of the fiduciary’s ward. That it may be adverse to those who stand in an adverse position to the fiduciary’s ward is not a justification for circumscribing the fiduciary.
Accordingly, it is determined that the notice of election heretofore filed is valid and should be given full force and effect. In view of this determination, there is no need to address the other points raised by petitioner. The parties are directed to appear on November 14, 1983, at 9:30 a.m. *185 for such further proceedings as may be necessary with reference to the remaining issue. Prior to further proceedings continuing, petitioner is also directed to either comply with the provisions of EPTL 13-3.5 or seek ancillary letters of administration of the estate of his deceased mother. The parties may settle an interim order or opt to await the conclusion of the proceeding.