OPINION OF THE COURT
Joseph S. Mattina, S.
This matter was brought before the court by the petition of *98 Peter V. Crane, the named executor, for the probate of the will of his father, Robert L. Crane. A guardian ad litem was appointed to represent the decedent’s surviving spouse, Edith Crane, who was not competent. Several days before the return date of the citation, Edith Crane died. On the return date, the guardian ad litem, who had been prepared to request court approval for filing an election against the will on Mrs. Crane’s behalf, argued that despite her death he still had the right to make that filing. He sought permission to remain as guardian for the purpose of exercising the right of election. The named executor opposed the request and asked for the guardian’s discharge.
The court adjourned the matter and ordered service of a supplemental citation on Mrs. Crane’s distributees, a sister and a niece, who would take the elective share amount through her estate if the exercise were permitted. On the adjourned return date, these distributees (hereinafter respondents) appeared by counsel and joined in the guardian’s request for authorization for a post-death election. After hearing the oral arguments and requesting written memoranda, this court reserved decision.
Robert Crane died on February 13, 1996, leaving a will dated July 20, 1992. After a $50,000 bequest to a friend and several lesser bequests to charities, the decedent’s will leaves $10,000 outright to his surviving spouse, with a further one half of the residue in trust for her. The petitioner as trustee is to apply the trust income for luxuries and comforts, but not for the support and care of the spouse. In addition, the will grants the petitioner sole discretion to pay any portion of the principal and any accumulated income for such luxuries and comforts. On the death of the spouse, the remaining principal and accumulated income are to pass to the petitioner. The petitioner also receives the other half of the residue.
According to his report, after interviewing the will witnesses and speaking with the attorney for the estate, the guardian had determined that the decedent’s will had been validly executed and should be admitted to probate. As part of his investigation, he contacted officials at the nursing home in which his ward had resided for the past 14 years. They informed him that she was not competent mentally and in failing physical health. After further review, he determined that it would be in his ward’s best interests to take one third of the net estate outright rather than receive the beneficial interest in the trust.
*99 The guardian complains that he did not have sufficient time to conduct an investigation and determine the propriety of exercising the election. He argues that implicit in the statutory authority for the guardian to elect on behalf of his ward is a meaningful time within which to make the election. The respondents support his position and maintain that to deny the guardian’s request would effectively create an unworkable and impractical rule, which would compel a guardian to file an election immediately upon his appointment, without the benefit of full consideration of the best interest of his ward. The petitioner counters that the right of election is personal to the surviving spouse and thus extinguished by her death.
We find the contention of the guardian and the respondents to be without merit. Like its predecessors, EPTL 5-1.1-A provides a surviving spouse the option to take a share of the net estate (including testamentary substitutes) of the decedent spouse instead of the portion, if any, of the estate left to her under the will or passing to her by intestacy. This right of election is, according to the statutory language, "personal to the surviving spouse”. (EPTL 5-1.1-A [c] [3].) An executor or administrator of a deceased spouse cannot exercise it. (Matter of Brill, 175 Misc 236; Matter of Ackler, 168 Misc 623; Matter of Froman, 165 Misc 400.) It may, however, be exercised by "[t]he guardian ad litem for the surviving spouse when so authorized by the court that appointed such guardian.” (EPTL 5-1.1-A [c] [3] [D].) The statute clearly does not confer on the spouse a vested right or an automatic entitlement to a prescribed portion of the estate. Rather, it permits her to make a choice between the statutorily defined share and the testamentary bequest (or intestate share). In order to exercise her right to the elective share, the statute requires the spouse (or her guardian) to take affirmative action by serving a notice of election on the estate’s fiduciary (or the named executor if the will has not yet been admitted to probate) and filing it with the court within six months from the issuance of letters, but in no event more than two years from date of death. In specifying that the right is "personal” to the spouse, the statute sets a further temporal limitation on the exercise: it must be made within the lifetime of the spouse if that should end before the six-month (or two-year) period.
Decisional law overwhelmingly supports our interpretation of this statutory language. In fact, we have found no case in which a court has permitted a guardian, a conservator, a committee, let alone an executor or administrator, to exercise the *100 right of election after the death of the spouse. It is important to note in this regard that the statute imposes a further requirement, above and beyond the actual making of the election, on the guardian ad litem (or conservator or committee) seeking to exercise the right on behalf of the spouse. He or she must seek court authorization for the exercise. It is eminently clear from a reading of the cases in this area, however, that the service of the notice of election on the fiduciary and its filing with the court is of prime importance and constitutes the exercise of the election and must predate the death of the ward. (In re Banks’ Will, 31 NYS2d 652; Matter of Coffin, 152 Misc 619.) In Matter of Youngs (175 Misc 716), the Suffolk County Surrogate’s Court held that a committee did not fully comply with the statute when it procured a court order authorizing it to make the election prior to its ward’s death, but did not actually file the notice of election until V-h hours after death. The service and filing, the court said, had to be completed before death, because "upon the death of the incompetent, no one was clothed with power to act for the deceased”. (Matter of Youngs, supra, at 718.) Similarly, when an incompetent spouse died during the pendency of a proceeding involving his committee’s authorization to contest and to elect against his deceased wife’s will, the Supreme Court, New York County, held that both the right to contest and the right to elect terminated at his death. (Matter of Goldfarb, 17 Misc 2d 649.)
In Matter of Harris (35 Misc 2d 443), the Supreme Court, Fulton County, deemed a committee’s exercise of the right of election valid because it had served, filed, and recorded the notice of election prior to the incompetent spouse’s death. The court so held even though the committee had not as yet obtained a court order authorizing the election. The court called the failure to procure prior approval "a procedural error and a mere irregularity” which could be corrected after death. (Matter of Harris, supra, at 445.) An especially good example of the judicially perceived primacy of the service and filing of the notice is a decision of the Bronx County Surrogate, Matter of Fabell (121 Misc 2d 176). In Fabell, the court held an election made by a surviving spouse’s son, who had been duly appointed her guardian by a Pennsylvania court, to be valid, even though the son had not yet been appointed conservator for his mother in New York. The son, aware of his mother’s precarious health, had sought and obtained from Bronx County interim authority to make the election, and he had filed the notice of election prior to his mother’s death.
*101 We find the guardian’s and respondents’ own reliance on Fa-bell (supra) to be misplaced. In this decision, as well as in the others cited in the written submissions of both guardian and respondents, the conservator, committee, or guardian made the actual election, that is, the service and filing of the notice of election, prior to the ward’s death, even though he or she may have sought authorization or even appointment as conservator post-mortem. The facts before us now are in no way analogous to those of such cases. Here, the guardian neither obtained court approval nor effected the actual filing of the notice of election before the spouse’s death. Far from providing a rationale for a post-death exercise of the election, Fabell, especially, offers guidelines for a guardian who fears the imminent demise of his ward: seek an interim order authorizing the exercise of the election during the pendency of the probate proceeding.
The legislative history of EPTL 5-1.1-A, 5-1.1 and predecessor statutes supports the judicial refusal to permit the exercise of the election post-death. The Legislature’s intent was to protect a spouse from impoverishment during his or her lifetime. We consider this observation by the Oneida County Surrogate’s Court most telling: "The purpose of this limited right of election is to avoid financial embarrassment to the surviving spouse during that critical period of readjustment following death and not to fatten the bounty of testamentary beneficiaries or to enhance the value of the shares of the recipients of the intestate property when the spouse who survives has failed to exercise the right of election prior to death.” (Matter of Ackler, 168 Misc, supra, at 626-627.)
During its exhaustive review and overhaul of New York estates law, the Bennett Commission considered, but rejected, a proposal to permit a spouse’s executor or administrator to exercise the right of election after her death, thus reemphasizing that the option to take the statutory share should be accorded only to a living spouse. The Commission’s recommendation is particularly apposite to the case now before us, which involves a second marriage: "The right of election should remain a personal right. While allowing it to be exercised by an executor or an administrator might have certain tax advantages, it would not be in accord with its purpose of compelling a married person to provide for his dependents. In cases of second marriages, it might have the effect of enriching the distributees or legatees of the survivor at the expense of the children or legatees of the one who died first.” (3d Report of Temp St Commn on Estates, 1964 NY Legis Doc No. 19, at 200.)
*102 We need not determine whether the guardian in the case at bar had a "meaningful time” within which to exercise the elective share right on behalf of his ward. The statute does not admit such an analysis, for neither implicitly nor explicitly does it posit any such time period. Its temporal limits are simply stated: six months from the issuance of letters or the surviving spouse’s moment of death, whichever is sooner. Courts have strictly enforced the termination of the right to elect at the spouse’s death. Their leniency has extended only to the allowance of more ministerial actions, ancillary to the serving and filing of the notice to elect, post-death.
We do not believe this interpretative stringency effectively forces every guardian for an incompetent spouse immediately on his appointment to make the election, as respondents argue. The situations in which this might be necessary are, we believe, rare. And, given the availability of interim relief in the form of a show cause order authorizing the election for a spouse believed to be in extremis, the burden on the guardian in such instances is not onerous.
Wherefore, the request by the guardian ad litem to be permitted to exercise the right of election on behalf of his ward after her death is hereby denied.