OPINION OF THE COURT
Eve Preminger, S.
This is a proceeding to determine the validity of a right of election by a surviving spouse’s estate.
Decedent Paul Wurcel died on January 21, 1998, leaving a will dated June 19, 1994, which left half his estate in trust for the benefit of his surviving spouse, Esther Wurcel. In 1993, Esther had been diagnosed with severe dementia and Alzhei *797 mer’s disease, which resulted in her being placed in a nursing home. In 1996, Esther’s Medicaid application was approved and her care was paid for through the Department of Social Services (DSS). Esther remained institutionalized until her death, one year after decedent, on January 25, 1999. DSS now asserts an approximately $124,000 claim against Esther’s estate.
Decedent’s will appointed his nephew, Arkadiy Sherer, who was a beneficiary under the will, as executor and trustee of the testamentary trust. Sherer did not petition for probate of decedent’s will until January 27, 2000, two years after decedent’s death and a year after Esther’s. Jeannie Fossick was appointed administrator of Esther’s estate, and here petitions to exercise Esther’s statutory right of election against decedent’s estate. She claims that Sherer intentionally delayed admitting decedent’s will to probate to prevent Esther (or a guardian on her behalf) from exercising her elective share.
In 1992, amid extensive discussion and controversy, the Legislature abolished the elective share trust (L 1992, ch 595, § 10; see Bill Jacket, L 1992, ch 595). One third of a dying spouse’s estate or $50,000, whichever is greater, must now be given, upon election, to the surviving spouse “absolutely” or outright (EPTL 5-1.1-A [a] [4] [B]). The statute also provides that when authorized by the court, a guardian for the surviving spouse may exercise the right of election (EPTL 5-1.1-A [c] [3]). No guardian was ever appointed for the incompetent surviving spouse and no election was sought to be filed before death.
Respondent Sherer argues that an election cannot be made after the death of the surviving spouse. The right of election is explicitly a “personal” right of the surviving spouse and the statute does not authorize the estate representative of a spouse who dies second to file the election (see EPTL 5-1.1-A [a]).
The elimination of the elective share trust represented a significant break from the historical arrangement of rights to a spouse’s estate. Dower and curtesy, from which the right of election sprang, were only specific lifetime interests in a dying spouse’s estate (see 40 NY Jur 2d, Decedents’ Estates §§ 955-1034 [dower and curtesy]; Gary, Marital Partnership Theory and the Elective Share: Federal Estate Tax Law Provides a Solution, 49 U Miami L Rev 567, 571 n 19). No longer is that the arrangement in New York with outright ownership, not a lifetime interest, necessary to fulfill the surviving spouse’s rights.
From a policy standpoint, a significant impetus for this change in the elective share was the evolving view of marriage. *798 Yet despite the claim by groups supporting the 1992 amendments on grounds that marriage is an economic as well as an emotional partnership, the Legislature did not amend the statute to permit after death elections (see Mem of Trusts, Estates, Surrogate’s Court Comm, Assn of Bar of City of NY at 8, 12-13, Bill Jacket, L 1992, ch 595 [reform should infuse elective share law with community property concepts]). The Legislature broke from the past, but did not do so completely, and the statutory language now in place compels the conclusion that the right to seek to file the election expires at death.
The line the Legislature drew does lead to anomalies: the statute permits a spouse who files the election but who dies shortly thereafter to have his or her estate enforce the election, whereas the estate of a spouse who did not seek the election cannot (see 1st Report of Advisory Comm on EPTL and SCPA, reprinted in 1993 McKinney’s Session Laws of NY, at 2125, 2130-2134; see also Matter of Fabell, 121 Misc 2d 176 [1983]; Matter of Harris, 35 Misc 2d 443 [1962]).[1] Also, as one court has held, the statute does not allow a right of election if the guardian of an incompetent surviving spouse actively reviewing the matter does not seek the court’s permission to file it before the ward’s death (Matter of Crane, 170 Misc 2d 97 [1996]). By abolishing the elective share trust, the Legislature enhanced the rights of surviving spouses, but stopped short of making them forced heirs.
Moreover, the Legislature has specified the additional protections afforded incompetent surviving spouses. The statute reiterates that the right is “personal to the surviving spouse, except that” it permits certain representatives of incompetents, with the court’s approval, to file the election (EPTL 5-1.1-A [c] [3]). Also, the surrogate may in his or her discretion extend the time an incompetent spouse has to file the election up to the time of the decree in the fiduciary’s first judicial account for the decedent’s estate (EPTL 5-1.1-A [d] [3]), which is more generous than for those with no disability (EPTL 5-1.1-A [d] [1]). Having specifically addressed incompetent spouses, the *799 court has little leeway in fashioning a different rule when, as here, the incompetent spouse went unrepresented until her death. Given the clear legislative emphasis that the right is personal and the fact that the statute provides a mechanism for incompetents to elect, the court is not at liberty to disregard the traditional view that the surviving spouse’s death takes the right to seek to file the election with it (Matter of Crane, supra; Matter of Mihlman, 140 Misc 535 [1931]; Matter of Coffin, 152 Misc 619 [1934]; Matter of Froman, 165 Misc 400 [1937]; Matter of Adder, 168 Misc 623 [1938]).
Nonetheless, the court also cannot disregard allegations of fraudulent conduct on the part of a conflicted fiduciary. Esther’s estate is not without a possible remedy here. To hold otherwise would be putting a premium on ignoring the rights of unrepresented and incompetent surviving spouses by persons whose interests conflict with them. Here, Sherer, as a beneficiary under decedent’s will, stood to lose a portion of what he would take as legatee if the surviving spouse elected. If he did so deliberately, he will not be permitted to benefit at the expense of an unrepresented incompetent.
Matter of Goldstein (176 Misc 366 [1941]) provides an analogy. There, the court relied on a legislative document, which made clear that the deadline for filing an election was “exclusive,” and would foreclose the right of a spouse to thereafter elect (id. at 367). In that court’s view no election could be made, and if there was fraud, the spouse could sue the person who committed it for her losses (id.).[2] As in Goldstein, this case presents a limitation that is meant to foreclose the right to elect, that being the death of the surviving spouse. Here, the alleged defrauder is Sherer and his claimed intentional delay in probating the will while acting in his fiduciary capacity.
The duty to probate a will is moral, not legal (2 Warren’s Heaton, Surrogates’ Courts § 41.02 [1] [d]), but an executor cannot avoid a legatee’s inquiry into his or her delay in probating a will and responsibility therefor where the executor knew that delay would likely result in a substantial decrease in the stock that was the estate’s main asset and where the executor had a conflict of interest (Matter of Yarm, 119 AD2d 754 [1986]). In other words, a conflicted executor cannot through intentional delay in petitioning for probate seek to line his or her own pockets at the expense of the will’s beneficiaries.
*800 Although Sherer’s motives might prove to be pure, the estate of the incompetent spouse can inquire as to whether he delayed on purpose. Sherer’s affidavit of delay does not dispel all questions as to whether his inactivity was induced by his conflict of interest. Petitioner is entitled to explore the issue more fully.
Regarding remedies, since this is an equitable action for fraud, if proven, the court can impose a constructive trust. Case law has delineated specific scenarios where a constructive trust will be imposed and these involve the unjust enrichment flowing from the abuse of a confidential relationship (see Sharp v Kosmalski, 40 NY2d 119 [1976]; Oursler v Armstrong, 10 NY2d 385 [1961]; Sinclair v Purdy, 235 NY 245 [1923]). These are not exclusive because “a constructive trust is bound by no unyielding formula [and t]he equity of the transaction must shape the measure of relief’ (Beatty v Guggenheim Exploration Co., 225 NY 380, 389 [1919]; see Simonds v Simonds, 45 NY2d 233, 241-242 [1978]). The circumstances here fall well within those cases where claims in equity are heeded: a family member nominated to be executor, but whose interests conflicted with the unrepresented incompetent spouse, and a long delay in the nominee seeking probate.
As explained in Matter of Hearn (158 Misc 370 [1936]), fraud in equity has a much broader connotation than at law and includes acts inconsistent with fair dealing and good conscience that result in a benefit conferred upon the one holding a dominant position (id. at 375). This could be the case here if petitioner shows Sherer’s conflict induced his delay. Hearn could suggest that the claims of fraud may resurrect the right of election, but without a guardian who sought permission to file the election, the legislatively created right terminated at death. Although the right of election cannot now be filed, this does not prevent the estate of the incompetent spouse, who went unrepresented during life, from pursuing the person who may have consciously sought to deprive the incompetent spouse of the elective share. The measure of damages awaits further development of the facts.

. The Advisory Committee on the EPTL and SCPA, which proposed much of the 1992 amendments, was concerned about providing equity in light of modem ideas of marriage as an economic partnership. The Committee, however, concluded that the “failure to distinguish between ‘marital’ and ‘separate’ property and failure to evaluate the assets of both spouses” could only be redressed by substantial overhaul of marital property law, concerning rights both at divorce and at death. This, the Committee considered to be well beyond its mandate (1st Report of Advisory Comm on EPTL and SCPA, reprinted in 1993 McKinney’s Session Laws of NY, at 2125, 2134).

. The statute still provides that the time limit is “exclusive” but a court can now extend the time to file the election (EPTL 5-1.1-A [d] [2], [3]; see Matter of Levin, 181 Misc 2d 868 [1999]).